HOWARD MCMASTERS, APPELLEE, v. CITY OF LINCOLN, APPELLANT.

FILED MAY 19, 1917. No. 19341.

1. **Municipal Corporations: DEFECTS IN STREETS: NOTICE.** Section 4583, Rev. St. 1913, requiring written notice of defective· public

streets to be filed with the city clerk five days before the occurrence of the injury complained of, has no application when the defects complained of were open and obvious and existed at the time the city opened the street to public travel, without guarding or warning against them.

2. ———: ———: NEGLIGENCE: QUESTION FOR JURY. Where plaintiff was injured by his horse becoming frightened and plunging down a declivity into a creek bed in the street, which the city left unguarded when it opened the street to the public, the question of negligence is for the jury.

3. Evidence examined, and *held* to support the verdict.

APPEAL from the district court for Lancaster county: WILLARD E. STEWART, JUDGE. *Affirmed.*

*C. Petrus Peterson, Charles R. Wilke* and *George W. Berge,* for appellant.

*E. P. Holmes* and *Guy C. Chambers, contra.*

MORRISSEY, C. J.

While plaintiff was driving a horse and buggy along Twenty-third street in the city of Lincoln, the horse became frightened and plunged down a declivity into a creek bed in the street, and plaintiff suffered injuries. On the trial he was awarded a judgment for $2,000, and defendant has appealed.

Twenty-third street was 100 feet wide at the point where the injury was received. Antelope creek made a sharp curve and swung out to about the center of the street and ran for some distance parallel with the street. The city had failed to erect any guards or barriers to protect travelers from driving into the channel.

Defendant invokes the provisions of section 4583, Rev. St. 1913, which provides that cities of the first class shall be exempt from liability for damages or injuries suffered or sustained by reason of defective public streets unless actual notice in writing of the defect shall have been filed with the city clerk at least five days before the receipt of the injury. No notice of this kind had been given, and the trial court instructed the jury: "That such notice would

be unnecessary, if you believe from the evidence that any dangerous condition of said street was the result of the action of said city in establishing said street in the manner and under the conditions as shown by the evidence." If section 4583, Rev. St. 1913, applies, no recovery can be had; but appellee contends that it does not apply where the city causes the defect in the street, or leaves the street in a defective condition when laying it out.

In *Updike v. City of Omaha*, 87 Neb. 228, 237, it was held that this provision of the statute has no application to defects caused by the city itself in negligently constructing a sewer in one of the streets of the city. In the body of the opinion the section is discussed: " 'What was the purpose of requiring this notice? Clearly, to direct the attention of the proper officers of the city to the fact that at a particular point on one of the public highways of the city there exists at the time a condition in the public highway which renders the street unsafe and dangerous for public travel, a condition likely to result in injury to some traveler on the highway. The purpose of this notice was to enable the city to prevent accidents by repairing or guarding the defect.' This is undoubtedly the real purpose of the legislation. The city had been held liable in some cases in which it was uncertain whether the officers of the city had notice of the defect complained of. It was regarded as a question of fact for the jury to determine whether they knew, or the circumstances were such that with reasonable diligence they must and ought to have known, of the dangerous condition of the streets. And having apparently more regard for the financial interests of the city than for the rights of strangers or danger to the citizens, the legislature purposed to change this. There should no longer be any liability on the part of the city unless its officers actually knew of the defect. It was not presumed that the officers of the city would themselves create the defect. The statute was not necessary nor intended for such a contingency. To so construe the statute would be to hold that the intention of the legislature was to bar a proportion of the claims against the

city without regard to the justice of the claims or the conditions under which they arose." (p. 239) "If the act causing the dangerous condition is done by the officers of the city themselves, the knowledge of its existence is inherent in the act. To suppose that the legislature intended that they must be notified of their own act is to question the judgment and motives of the lawmakers."

The only essential difference between the facts in *Updike v. City of Omaha* and the instant case is that in the former case the city itself negligently constructed the sewer. In the instant case it did not make the excavation into which plaintiff fell. But it did lay out and maintain the street, and in doing this, through its officers and agents, it had notice and knowledge of the topography of the earth. It knew the dangerous condition that existed. It opened the street for travel and impliedly invited the public to use it as a thoroughfare. There can be no difference in principle between the act of the city in negligently laying a sewer and in negligently leaving open and unguarded a pitfall which nature made, when that pitfall existed at the time the street was laid out, and had existed, as said in defendant's brief, "from time immemorial."

Defendant further insists that no negligence has been shown. The distance between the lot line on the east side of the street and the bank of the creek on the west side of the street was 41 feet, and the traveled roadway was about 15 feet in width. The plaintiff was traveling on the right-hand side of this roadway, the side next to the creek, when his horse suddenly shied and plunged down the declivity. He testifies that the wind was blowing, that he does not know what caused the horse to shy, but gives it as his opinion that he might have been frightened by blowing paper. It must be admitted that the roadway was sufficient in width, and that had the horse remained on the grade the road would have carried him safely. Was the city chargeable with negligence in failing to fill the pit or to erect suitable barriers?

The court instructed the jury: "It was the duty of the city to use reasonable care to make the highway safe for travelers, and if you believe from the evidence that in the exercise of such reasonable care to make said highway safe, at the point where it is alleged that plaintiff fell into said ditch, or creek bed, some guard or protection was necessary to prevent travelers from falling into the ditch, and if you find that the city failed to do this, and was negligent because thereof, then you are instructed that if you find from the evidence that because of such negligence, if such you find there was, the plaintiff, while in the exercise of due care, fell into said ditch, and was damaged thereby, then you will find for the plaintiff." No complaint is made of this instruction, and the verdict of the jury must be taken as a finding that the city did not exercise due care to make the highway safe.

In *Gould v. Schermer*, 101 Ia. 582, a case wherein plaintiff's horse became frightened on a bridge which had no guard rails, it was held that the question of negligence was for the jury, although guards or rails were not required by law.

A case very closely in point is cited with approval in *Dailey v. Swift & Co.*, 86 Vt. 189, wherein the court say:

"What is known as the 'Partridge Case,' *Hilas Grow v. Town of Corinth*, heard and decided by this court, in Orange county, in March, 1881, though never reported, seems to have involved much the same principle, in this respect, as the case now before us. There, when the plaintiff, a traveler, was passing over a public highway in the defendant town, driving a pair of horses, his horses took fright at the noise made by the flying up of a partridge in the bushes on the upper side of the traveled road, but within the limits of the highway, became unmanageable, and without fault on his part ran off the bank on the lower side of the road, whereby the plaintiff was injured. There was no guard or railing on that side of the road where the team went off. On the facts found by a referee, the town contended that the proximate cause of the in-

jury was the flying up of the partridge, and not the want of a guard or railing on the side of the road, and therefore it was not liable.

"It was held, Chief Judge Pierpont orally delivering the opinion of the court, that a suitable guard or railing on the side of the road at the place in question would have prevented the accident, and consequently the want of such guard or railing was the proximate cause of the injury, and the town was responsible." For other cases in point, see *Walrod v. Webster County*, 110 Ia. 349; *Harvey v. City of Clarinda*, 111 Ia. 528.

It is further said that the verdict is excessive. There is a conflict in the evidence as to the extent and character of the injuries received. Plaintiff claims that his back was wrenched, that one ankle was so badly crushed that it was necessary to keep it in a cast for several weeks, and he was still wearing a brace at the time of the trial, about five months after the accident. He also claims to have suffered a hernia. There is evidence that his ankle has practically recovered, and there is a dispute as to whether hernia was produced as a result of his injury. But plaintiff was before the trial court and the jury. They were better able to judge of his injuries and his sufferings than we. The verdict does not seem to be so excessive as to require a remittitur.

As a final assignment, it is said that the court erred in overruling the motion for a new trial because of newly discovered evidence. Affidavits in support of the motion are found in the transcript, while we have uniformly held that in order to have such affidavits considered on appeal they must be incorporated in the bill of exceptions.

The judgment is

AFFIRMED.

ROSE, J., dissents.

LETTON, J., not sitting.