WATSON, Respondent, *v.* CITY OF BOZEMAN, Appellant

No. 8452

Submitted January 30, 1945. Decided February 19, 1945.

156 Pac. (2d) 178

Mr. Walter Aitken of Bozeman for Appellant.

Mr. James H. Morrow, Jr., and Mr. George Y. Patten, both of Bozeman, for Respondent.

MR. JUSTICE CHEADLE delivered the opinion of the court.

This is an action for damages for personal injuries sustained by plaintiff as a result of alleged defective construction of a gutter plate built and installed by the defendant city. The facts are substantially as follows:

The plaintiff, accompanied by her daughter, was walking along the west side of Black Avenue in Bozeman toward their home on that avenue, located about a half block north of its intersection with Lamme Street. As they approached the southwest corner of the intersection, the daughter, who was to the right and slightly ahead of plaintiff, stepped on the east end of the gutter plate covering the gutter drain at that point, with the result that the gutter plate tipped and caused plainiff to trip and fall violently to the sidewalk. As a result of the fall she suffered a depressed fracture of the malar bone and the orbital plate of the maxillary bone, which together form the lower rim of the orbit of the eye. The evidence is not entirely clear as to the exact manner in which the injury occurred, but the testimony of the plaintiff and her daughter, coupled with certain allegations found in defendant's second affirmative defense, establishes to our satisfaction that it occurred in the manner above set forth.

Plaintiff testified that she had resided at the same location for about forty years; that she usually crossed this particular gutter plate in walking to and from her home and had crossed it probably hundreds of times. She did not particularly observe the plate on the evening the accident occurred; she knew how the plate was supported, and did not notice any difference

in the supports that day; that the supporting lugs are in plain sight, visible to anyone who crosses there.

The daughter testified that she had crossed this plate a good many times; that on the occasion when the injury occurred she did not observe any unusual condition of the plate to make her apprehend danger.

It appears from the record that this particular gutter plate had been in place and in use for a period of at least four or five years prior to the date of the injury; that about two hundred of this type of plate have been in use for a good many years; that no defective condition of this or other similar plate or of any prior injury caused by any defect has ever been called to the attention of the city officials. One of plaintiff's witnesses testified that during the month of August, 1941, as she and her brother were approaching this particular gutter plate, a crowd of boys passed them, one of whom stepped on the end of the plate, causing it to fly up and strike her above the ankles; that her brother caught her so she didn't fall.

The gutter plates in use throughout the city consist of two planks 2 inches x 2 inches x 5 feet, supported by and fastened to two iron supports, one end of which rested, without fastening, upon the curbing and the other on the cross-walk. These plates were constructed by the city from a design prepared by the city engineer. Apparently this particular plate varied somewhat from the design in that the planks were four feet seven and five-eighths inches in length instead of five feet. The iron supports were placed nine and one-half inches from one end and about five and one-half inches from the other. On the day following the accident this plate was repaired by replacing the planks. In the repaired plate the iron supports were placed about two and one-half inches from each end of the planks.

After the case had been set for trial and shortly before the date set, it was brought to the attention of the court that the plaintiff herein was a member of the jury panel and had served on four trial juries prior to the trial of this case. The case

coming on for trial, the defendant made the following objection to trial before a jury to be selected from the panel:

"The defendant excepts and objects to trial before the present panel, or a jury selected from the panel, and I will state my objection into the record, if your Honor please. .

"1. The defendant objects to going to trial of this case before a jury chosen from the panel now in attendance on the court for the trial of cases, for the reason that the plaintiff in this action, Theo. A. Watson, is and has been a member of said panel.

"2. Has, since the beginning of the present jury term, been consorting with all the jury members of said jury panel; has served on at least four trial juries selected from said panel, and sat and conferred with members of said trial juries in the trial of cases, said jury being selected from said panel, and from which jurors for the trial of her own case must be chosen.

"3. That to compel the defendant in this action to submit to the trial of the issues in this action before a jury selected from said panel would deprive the defendant of a fair trial and impair its right to trial by an impartial jury, as guaranteed by section 23 [2, cl. 3] of Article III of the Constitution of the United States." This objection was overruled.

Upon voir dire examination each of the jurors called was challenged by defendant for cause, the challenge in each case being overruled.

Over defendant's objection evidence of medical expense paid by plaintiff in the amount of $47 was admitted, and defendant's motion to strike same was denied.

Defendant's thirteen specifications of error fall into three groups: First, error of the trial court in overruling defendant's objection to the jury panel and of its challenges to the individual jurors; second, that under the evidence the court erred in denying defendant's motions for nonsuit and directed verdict and for new trial, and that the evidence does not justify the verdict or judgment; third, error of the court in giving and

refusing certain offered instructions. We shall consider these specifications separately.

Defendant contends that because of the fact that plaintiff was a member of the panel from which the trial jury was drawn to try this case, over objection, defendant was denied its constitutional right of a fair trial by an impartial jury.

Section 9343, Revised Codes of 1935, provides for challenge to the panel and to jurors for cause or peremptorily. This section permits but one challenge on a side to the panel, and provides that such challenge may be made and the array or panel set aside by the court, when the jury was not selected, drawn, summoned, or notified as prescribed by law. Section 9344 sets forth the seven grounds upon which challenges for cause to individual jurors may be made. These do not include the ground that a litigant with a case to be tried during the term is a member of the panel or has acted as a member of trial juries during the term.

Defendant cites authority for the rule that, ''The enumerated causes for challenge in the statute are not always exclusive of all other causes not enumerated. For example, although a statute professes to give all grounds of challenging jurors for cause, the constitutional guaranty of an impartial jury will not be allowed to be destroyed by the legislature's omission of grounds that clearly render the juror incompetent.'' We agree with this as a general rule, but none of the authorities cited go so far as to hold that prejudice to the challenging party need not be shown, or that such prejudice must be presumed from the sole fact of the association of plaintiff with other members of the panel under the circumstances shown. State v. Russell, 73 Mont. 240, 235 Pac. 712, is authority for the rule that in criminal cases the right of an accused to trial by an impartial jury will not be permitted to be destroyed by the failure of the legislature to include grounds of challenge that clearly render a juror incompetent. State v. Brooks, 57 Mont 480, 188 Pac. 942. In 35 Corpus Juris Sec. 359, p. 333, the rule is stated: ''Where a litigant serves on the jury at a

term at which he has a case to be tried by a jury, all of the other jurors with whom he has been serving are incompetent to sit in the trial of his case.'' An examination of the authority for this rule, Garrett v. Patton, 81 W. Va. 771, 95 S. E. 437, discloses that the disqualification there was declared by statute.

Appellant quotes at length from State v. Wheeler, 179 Minn. 557, 230 N. W. 91, 94. There, under circumstances similar to those of this case, the trial court refused a motion for continuance for two months, which the appellate court held as error. That case differed from this, however, in that the prospective jurors were not shown to have been examined as to bias and prejudice. Because of apparent misconduct of the respondent's son and others in the presence of witnesses, discussion of the case by one of the jurors with a third party, and apparent excessiveness of the verdict, the court concluded that ''a sufficient showing of prejudice had been made, and that it was error not to continue the case or to call in other jurors for the trial.''

Each prospective juror was closely examined and stated that ██ ██ he or she had heard nothing and knew nothing about the facts of the case, and that the fact that he or she was a member of the jury panel of which plaintiff was also a member would have no bearing whatsoever upon any verdict rendered in the case. These statements of the jurors, coupled with the verdict of $500 damages when $5,000 had been asked, indicate a lack of prejudice on the part of the jury. While we feel that under the circumstances of this case, on proper motion, the trial court should call in other jurors, we cannot say that its failure to do so constituted an abuse of judicial discretion. As is said in State v. Russell, supra [73 Mont. 240, 235 Pac. 715]: ''The examination of a juror on his voir dire is no more nor less than the taking of testimony on the issues raised as to his qualifications to serve in the case before the court. * * * The determination must be left largely to the sound discretion of the trial court (Scribner v. State, 3 Okla. Cr. 601, 108 Pac. 422,

35 L. R. A., N. S., 985; Commonwealth v. Minney, 216 Pa. 149, 65 A. 31, 116 Am. St. Rep. 763) and, in determining the question, the trial court, as in passing upon any other question of fact established by oral testimony, has the advantage of observing the witness on the stand, his demeanor and candor, or lack of candor, and a review of the court's rulings and findings should be governed by the same rules as in reviewing any other findings and judgment based thereon. They should not be set aside unless error is manifest, or there is shown a clear abuse of discretion. * * *'' Appellant has not shown prejudicial error.

There is no substantial conflict in the evidence, which is, in effect, as stated above. Certainly, if admissible, the evidence was sufficient to sustain the verdict. Hence the remaining question, raised by specifications of error falling within groups 2 and 3, is whether the trial court correctly applied the law in connection with admission of evidence of medical expense; with instructions given and refused; in refusing motion for a directed verdict; in granting the judgment; and in ruling on the motion for a new trial.

Defendant argues that evidence of expense for medical care, being in the nature of special damages, was inadmissible because not specially pleaded. The pertinent allegation of the complaint is ''that plaintiff was further caused thereby to remain in bed for a period of two weeks, to receive medical treatment, and is informed, and upon such information believes, that surgical attention will be, in the future, necessary and that the exact amount of expense therefore is as yet unknown to plaintiff. * * * .''

It may well be that this pleading is insufficient upon which to admit evidence of medical expense incurred or paid prior to the filing of the complaint, as it appears to refer to expense thereafter anticipated. Instruction 14 directs the jury, in part: ''You will also include such sum or sums as you find from a preponderance of the evidence the plaintiff has necessarily and properly expended for medical and surgical services

and attention, if any, not to exceed $47.50 because of such injuries.'' Be that as it may, it cannot be determined whether the jury included any amount as damages for medical expense. Plaintiff claimed $5,000 damages, and was awarded $500 by a general verdict. Whether error or not, we cannot see that the admission of this evidence was prejudicial or that defendant has been injured. Ball v. Gussenhoven, 29 Mont. 321, 74 Pac. 871.

Defendant's motion for a nonsuit is based on the grounds that the complaint does not state facts sufficient to constitute a cause of action, and that there is no evidence that defendant received notice of any defect as required by section 5080, Revised Codes of 1935, as amended by Chapter 122, Laws of Montana, 1937, which provides, so far as is here pertinent: ''Before any city or town in this State shall be liable for damages to person and/or property for, or on account of, any injury or loss alleged to have been received or suffered by reason of any defect or obstructions in any bridge, street, road, sidewalk, culvert, park, public ground, ferry-boat, or public works of any kind in said city or town, it must first be shown that said city or town had actual notice of such defect or obstruction and reasonable opportunity to repair such defect or remove such obstruction before such injury or damage was received; * * *.''

Instruction 12 is as follows: ''You are instructed that if ▇ you find by a preponderance of evidence in this case that the gutter plate in question was defective, as charged in the complaint, at the time the same was designed and constructed by the city of Bozeman, and such defect was not thereafter corrected, the city of Bozeman is chargeable with knowledge of such defect and a further notice, as a condition of liability on the part of the city, was not necessary.''

This instruction was objected to by defendant on the ground that ''it ignores the right and duty of the city, through its constituted authorities, to exercise a reasonable discretion in adopting a design for the gutter plate, and that if, in the exer-

cise of such discretion it acted reasonably, and the defect was not apparent, and common experience in the use of it failed to disclose any such defect, then the city was not liable for any accident resulting from such defect until it had actual notice thereof and reasonable opportunity to correct it, the city in adopting and using such design acting in its governmental capacity.''

For reasons hereinafter shown we hold that this instruction was proper. The question of whether the plate was defective in design and construction was left with the jury, which must have found that it was so defective and that the defect had not been corrected prior to the injury. And, under other instructions, the jury must have determined that the defect was the proximate cause of the injury. The evidence amply sustains these findings.

While section 5080, as amended, provides that before a city ▮ or town shall be liable for damages for such a defect it must first be shown that said city or town had actual notice thereof and reasonable opportunity to repair same prior to an injury, such actual notice is not necessary to charge a municipality with liability for defects due to its own direct act. The rule is stated in 43 C. J. 1042:

''Municipal corporations are chargeable with knowledge of their own acts, or those ordered by them; and therefore whenever defective conditions in streets are due to the direct act of the municipality itself or of persons whose acts are constructively its own * * * no notice need be shown, or, as it is otherwise stated, notice of the defect is implied in such cases.

''The rule that notice is not necessary to charge a municipality with liability for defects due to its own direct act applies where the defect is one of original construction, as distinguished from a mere condition of repair * * *. The fact that actual notice, as a condition of municipal liability, is expressly provided for by statute or municipal charter does not change the rule that notice is not necessary when the defective condition is due to the direct act of the municipality or of those

acting by its authority, including cases of defects in original construction." McMasters v. City of Lincoln, 101 Neb. 278, 163 N. W. 319; Misener v. City of Syracuse, 173 App. Div. 914, 158 N. Y. S. 475; City of Houston v. Owen, Tex. Civ. App., 67 S. W. 788; Tompkins v. City of Oswego, 61 Hun. 619, 15 N. Y. S. 371, affirmed 131 N. Y. 581, 30 N. E. 67; Willis v. City of San Antonio, Tex. Civ. App., 267 S. W. 763; Id. Tex. Com. App., 280 S. W. 569; Butler v. City of McMinnville, 126 Or. 56, 268 Pac. 760, 59 A. L. R. 381.

In the recent case of Barry v. City of Butte, 115 Mont. 224, 142 Pac. (2d) 571, 573, this rule was followed by this court in an action arising out of injuries caused by a defective catch-basin constructed by the city with W. P. A. labor. We there said, with reference to the notice required in Sec. 5080, as amended: "The substance of that section is that no city or town shall be liable for any damage to persons or property for defects in any property or structure under the control of the municipality unless it first be shown that the municipality had notice of the defect causing the injury. The municipality, however, shall not be excusable if it does not give warning to the public in some manner, such as placing flags or signs at the place where the defect exists, until repairs are made. The rule is that if, as here, the defective condition is due to the act of the municipality itself, or to its negligence, no notice to the municipality of such condition is necessary, even where actual notice is expressly required by statute. It is only when the defect or danger arises from other means than an act of the municipality that the municipality is excused until notice received." (Citing cases.) The city, having itself constructed the instrumentality, is chargeable with actual notice of the defect which the jury has held was the proximate cause of the injury.

We think the complaint states a cause of action. Defendant's motion for a nonsuit, based upon lack of notice of the defective condition of the gutter plate, was properly overruled.

Defendant contends that under the rule announced by this

■ court in Remesz v. City of Glasgow, 95 Mont. 595, 28 Pac. (2d) 468, 470, the evidence was insufficient to justify the verdict or the judgment. That case, decided prior to the amendment of section 5080, hinged upon the question of constructive notice to the city of the defective condition of a plank covering a gutter in a cross-walk somewhat similar to the gutter plate here involved. The decision is not determinative of the question now presented. It involved, not an original defect in construction, but a condition of subsequent disrepair which the city, in the exercise of reasonable care, should have observed and corrected. It was held: "Upon this hypothesis the city had constructive notice of the defect. We must conclude, upon the whole case, that this disputed issue was a question of fact to be resolved by the jury, and not a question of law for the court." The question here was whether the instrumentality was defective at the time it was designed and constructed by the city, and such defect, if any, not subsequently corrected, and whether such defect was a proximate cause of the injury. This was a question of fact properly submitted to the jury, and we must hold that the evidence was sufficient to support the jury's determination. The trial court was correct in granting judgment for plaintiff and denying defendant's motion for a new trial.

There being no error, the judgment is affirmed.

Chief Justice Johnson, and Associate Justices Morris and Angstman concur.

Mr. Justice Adair (concurring):

I concur in the result but not in all that is said in the foregoing opinion.