No. 87-05

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

WAYNE E. MAHAN,

             Plaintiff and Appellant,

    -vs-

FARMERS UNION CENTRAL EXCHANGE, INC.,
doing business as CENEX, a foreign
corporation,

             Defendant and Respondent.

APPEAL FROM: District Court of the Thirteenth Judicial District,
            In and for the County of Yellowstone,
            The Honorable Robert Holmstrom, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Whalen & Whalen; Timothy J. Whalen argued, Billings,
        Montana
        Boschert & Boschert; Rosemary C. Boschert, Billings,
        Montana

    For Respondent:

        Veeder, Broeder & Michelotti; David A. Veeder argued,
        and Robert J. Waller argued, Billings, Montana

    For Amicus Curiae:

        James Zion, Montana Human Rights, Helena, Montana

                   Submitted:   October 27, 1988

                   Decided:   January 24, 1989

Filed:

FILED
'89 JAN 24 AM 11 19
ED SMITH, CLERK
MONTANA SUPREME COURT

Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

Wayne E. Mahan appeals from a judgment based on a jury verdict denying him damages against the Farmers Union Central Exchange, Inc. (Cenex), in an action brought by Mahan in the District Court, Thirteenth Judicial District, Yellowstone County. We reverse and remand for a new trial.

On February 16, 1983, Wayne E. Mahan was the head development engineer at the Laurel Refinery operated by Cenex. His employment was terminated on that date, effective March 1, 1983. Mahan was sixty years old at the time, and had worked for more than 30 years for Cenex.

The jury verdict decided against Mahan on two issues, finding: (1) that Cenex was not guilty of age discrimination in terminating Wayne Mahan's employment, and (2) that Cenex had not breached an implied covenant of good faith and fair dealing in terminating Mahan's employment.

We will state other facts as they become pertinent.

SHOULD MAHAN'S CHALLENGES TO JURORS FOR CAUSE HAVE BEEN GRANTED?

Mahan urges as a principal issue on appeal that the District Court erred in failing to grant challenges for cause made by Mahan against jurors McCann and Anderson in the voir dire selection of the jury.

With respect to juror McCann, the following colloquy occurred:

MR. MICHAEL J. WHALEN: Thank you.

Mr. McCann, you I believe have sat on a case that I tried during March of this year; isn't that correct?

MR. McCANN: That's correct.

MR. MICHAEL J. WHALEN: First, my memory is that on the special verdict that was returned in that case, that you answered differently than the remainder of the jurors on the issue of punitive damages. I'll ask you whether or not there is something about punitive damages that is offensive to you in nature?

MR. McCANN: Yes, there is.

MR. MICHAEL J. WHALEN: Is it your position that you would not award punitivie damages in any case, no matter what instructions the Court might give you?

MR. McCANN: Yes, that's correct.

MR. MICHAEL J. WHALEN: Your Honor, I respectfully challenge this juror for cause.

THE COURT: Mr. Veeder, do you wish to inquire of the juror?

MR. VEEDER: Just briefly, your Honor. Mr. McCann, if you were given a jury instruction by the Court that indicated to you that punitive damages were a proper award or could be found to be a proper award by the jury in this case, and after hearing all of the evidence set forth during the trial and knowing what that instruction was, do you believe you could not award punitive damages?

MR. McCANN: I don't think I would.

THE COURT: Mr. McCann, the Court will make an inquiry. It isn't a question of one asking whether you will or wouldn't, depending on because you haven't heard the evidence; we all recognize that. The question is if the Court were to instruct you that punitive damages were recoverable, if you found certain facts to be true, and if you found those facts, would you then follow the Court's instructions?

MR. McCANN: Yes, I would.

THE COURT: All right. The challenge is denied.

MR. MICHAEL J. WHALEN: Do you know of any other reason, Mr. McCann, why you couldn't be fair and impartial if you're selected in this case with the information you have at this point as to the nature of the case?

MR. McCANN: No, I don't.

In the voir dire questioning of juror Anderson, the following discussion took place.

MR. MICHAEL J. WHALEN: Mr. Anderson, have you sat on any of the juries since you've been on this panel?

MR. ANDERSON: (No oral response.)

MR. MICHAEL J. WHALEN: I believe you've been on the panel since last July. Have you sat on any juries during the last year?

MR. ANDERSON: No.

MR. MICHAEL J. WHALEN: Your answer is no?

MR. ANDERSON: No. The answer is yes.

MR. MICHAEL J. WHALEN: Are you still working as an insurance broker at the present time?

MR. ANDERSON: I'm retired.

MR. MICHAEL J. WHALEN: You're retired?

MR. ANDERSON: I do have some --

MR. MICHAEL J. WHALEN: I can't hear you.

MR. ANDERSON: I said I've been retired.

MR. MICHAEL J. WHALEN: During the years that you were working as an insurance broker, did you do any business with the Cenex refinery in Laurel or St. Paul, Minnesota?

MR. ANDERSON: No.

MR. MICHAEL J. WHALEN: Have you had any direct business relationships with Cenex?

MR. ANDERSON:  No, sir.

MR. MICHAEL J. WHALEN: You have worked in the insurance industry for a number of years, as I understand.  If the Court should instruct you on the subject of punitive damages in this case, would you be willing to consider the law on that subject and award punitive damages if you felt that the facts justified it?

MR. ANDERSON: I was in Helton Life Insurance.

MR. MICHAEL J. WHALEN: But is there anything -- Strike that.

Punitive damages can be allowed by a jury for the sake of example, if the Court tells you it's a matter that you can consider.  If the Court should tell you that it is a matter that you can consider in this case, would you be willing to consider it fairly and openly?

MR. ANDERSON:  Yes, sir.

MR. MICHAEL J. WHALEN:  You'd be able to follow the law as given to you by the Court?

MR. ANDERSON:  Yes, sir.

MR. MICHAEL ANDERSON:  Do you know of any reason why you couldn't be fair and impartial if you are selected as a trial juror in this cause?

MR. ANDERSON:  Would you state that again, sir?

MR. MICHAEL J. WHALEN:  Do you have difficulty hearing?

MR. ANDERSON:  Somewhat, yes.  And I have a little speech --

MR. MICHAEL J. WHALEN:  Excuse me?

MR. ANDERSON:  (No oral response.)

MR. MICHAEL J. WHALEN:  Do you have difficulty hearing me?

MR. ANDERSON:  No, not now.

MR. MICHAEL J. WHALEN: Do you feel you would have difficulty hearing the evidence in this case?

MR. ANDERSON: I could hear the evidence.

MR. MICHAEL J. WHALEN: Well, do you think you could hear it all as we're going along?

MR. ANDERSON: Yes, I do.

MR. MICHAEL J. WHALEN: Do you know of any reason why you couldn't be fair and impartial if you are selected as a juror in this case?

MR. ANDERSON: No reason.

MR. MICHAEL J. WHALEN: Do you use a hearing aid at all?

MR. ANDERSON: Not at all.

MR. MICHAEL J. WHALEN: When you were in the insurance business, did you manage or oversee other employees?

MR. ANDERSON: That's right, I do -- I have.

MR. MICHAEL J. WHALEN: How many employees did you have?

MR. ANDERSON: It would vary for the insurance agents.

MR. MICHAEL J. WHALEN: What would be, generally, the number that you would have?

MR. ANDERSON: Well, usually it would be about 25.

MR. MICHAEL J. WHALEN: Having been in business yourself and managed 25 people on some occasions, do you feel that you would be inclined to favor management as distinguished from the plaintiff, an employee in this case?

MR. ANDERSON: Could you --

MR. MICHAEL J. WHALEN: Do you feel that you would be inclined to favor management in this case because of --

MR. ANDERSON:  Oh, yes.

MR. MICHAEL J. WHALEN:  -- because of your history?

MR. ANDERSON:  Yes.

MR. MICHAEL J. WHALEN:  You would favor management. That would be over the plaintiff, who is an employee?

MR. ANDERSON:  (No oral response.)

MR. MICHAEL J. WHALEN:  Whatever the evidence is, as I understand your answer, you would favor management; is that correct?

MR. ANDERSON:  I would favor management because I was hiring and -- agents, and it wouldn't be 25 that would seek -- and sometimes it -- they'd quite [sic] -- you know -- and go to -- they'd quit, you know, and go to other --

MR. MICHAEL J. WHALEN:  When you tell me that you would favor management in this case, is that a fixed and abiding feeling that you have that you should do?

MR. ANDERSON:  I prefer the management part, yes.

MR. MICHAEL J. WHALEN:  You would favor management in this case?

MR. ANDERSON:  Yes.

MR. MICHAEL J. WHALEN:  Your Honor, I respectfully challenge the juror for cause.

THE COURT:  Mr. Veeder?

MR. VEEDER:  Could you tell me what you mean when you say favor management?

MR. ANDERSON:  I prefer to -- instead of being strictly agent, I like to manage, and I would recruit, too, and --

MR. VEEDER:  That was your job before?

MR. ANDERSON:  Yes, sir.

- 7 -

MR. VEEDER: But --

MR. ANDERSON: I was in the business 27 years, and I retired the end of '79.

MR. VEEDER: Okay. But the question, sir, is whether you could hear the evidence in this case and wait until you fully heard the evidence before making up your mind, and when you did so, could you reach a verdict in a fair and impartial basis, being fair to both the plaintiff and to the defendant in this case?

MR. ANDERSON: Yes, sir.

MR. VEEDER: Could you do that?

MR. ANDERSON: Yes, sir.

MR. VEEDER: So any favoritism that you might feel for or towards management you could set aside and hear the evidence fairly?

MR. ANDERSON: Yes, sir.

MR. VEEDER: We have no further questions.

THE COURT: Mr. Anderson, when you said you favored management, did you mean that while you were working, you preferred to be in management rather than out selling?

MR. ANDERSON: That's right.

THE COURT: All right. The challenge is denied.

MR. MICHAEL J. WHALEN: I renew the challenge, your Honor, for the reason that it is apparent from what has taken place that the prospective juror will not be adequately able to follow the proceedings in this case. He has repeated on more than one occasion that he would favor management in making a decision in the case.

THE COURT: The challenge is denied.

MR. MICHAEL J. WHALEN: Do you know of any other reasons that might make it difficult for you to be fair and impartial in this case, Mr. Anderson?

MR. ANDERSON: Would you repeat that, please?

MR. MICHAEL J. WHALEN: Do you know of any other reason why it would be difficult for you to be fair and impartial in this case?

MR. ANDERSON: Not at all. I wouldn't be partial.

MR. MICHAEL J. WHALEN: Sitting where you are at the present time, are you inclined to decide this case in favor of the defendant at this point?

MR. VEEDER: I object, your Honor.

THE COURT: Sustained.

When a prospective juror has an unqualified opinion or belief as to the merits of the action, that juror is subject to a challenge for cause. Section 25-7-223, MCA. Generally, the determination as to whether a prospective juror is qualified or unqualified is left to the sound discretion of the trial court. This, because the trial court has the advantage of observing the witness and accordingly the court's decision to allow a juror to sit should not be set aside unless the error is manifest, or there is shown a clear abuse of discretion. State v. Williams (1979), 185 Mont. 140, 150, 604 P.2d 1224, 1229; State v. Russell (1925), 73 Mont. 240, 249-250, 235 P. 712, 715.

In this case plaintiff's counsel was forced to use two of his peremptory challenges to excuse prospective jurors McCann and Anderson from the case. He utilized all of his peremptory challenges, and points out in brief that there were other selected jurors against whom he would have used such challenges.

In Abernathy v. Eline Oil Fields Services, Inc. (1982), 200 Mont. 205, 650 P.2d 772, we had a case where the District Court intervened during voir dire examination of a juror to rehabilitate the qualifications of the juror. In Abernathy,

- 9 -

the trial court's discussion with the prospective juror was more extended. Generally we apply the rule that the trial court is in a better position to judge the prejudice of jurors, and that its decision will not be set aside unless the error is manifest or there is a clear abuse of discretion, Anderson v. Burlington Northern Inc. (Mont. 1985), 709 P.2d 641, 42 St.Rep. 1738, even where there has been a forced use of a peremptory challenge. Abernathy, supra. In this case, however, the error is manifest. McCann obviously had a fixed scruple against punitive damages and had followed his scruple in a previous jury trial. Anderson not only stated he preferred the management side but appeared to have difficulty in speaking and hearing.

The District Court, of course, may supplement the voir dire examination by his further inquiry, as permitted by Rule 47(a), M.R.Civ.P. However, in each case here the inquiry by the District Court was of a general nature, and not pointedly directed to the manifest "existence of a state of mind in the juror evincing enmity against or bias in favor of either party." Section 25-7-223(7), MCA. Mahan's counsel was thus forced to waste peremptory challenges he might have used elsewhere on the panel.

In Montana the right to a jury trial is secure to all and remains inviolate. Art. II, Section 26, 1972 Mont. Const. Concomitant with that right is the right to a fair and impartial jury.

Because we reverse and remand for a new trial, there are other matters raised in the briefs in this appeal which may be subject to controversy in any retrial. Accordingly, we will examine those issues for that purpose, pursuant to § 3-2-204(3), MCA.

DID THE COURT COMMIT ERROR IN LIMITING THE TESTIMONY OF PLAINTIFF'S STATISTICIAN WITH REGARD TO AGE DISCRIMINATION?

In Montana, an employee has the right to obtain and hold employment without discrimination as to age. Section 49-1-102(1), MCA. Courts have recognized that statistics are commonly used in discrimination cases. As the United States Supreme Court has observed:

> . . . Our cases make it unmistakably clear that "[s]tatistical analyses have served and will continue to serve an important role" in cases in which the existence of discrimination is a disputed issue.

Teamsters v. United States (1977) 431 U.S. 324, 339, 97 S.Ct. 1843, 1856, 52 L.Ed.2d 396, 417.

In this case the court limited the plaintiff's statistical expert to testimony of statistical tests performed on the Laurel nonunion employees. The District Court refused to allow the expert to testify to results from a statistical analysis of company-wide terminations of employment including union members.

Obviously, the inclusion of union employees in the statistical population, whose employment contracts contained seniority rights, would skew the figures affecting older terminated nonunion employees as to the probability that older nonunion employees were discriminated against on the basis of age. The court was correct in so limiting the testimony.

The result of the limitation was that the entire population of terminated employees considered by defendant's statistical expert was forty-nine persons. On cross-examination of defendant's statistical expert, the plaintiff's counsel used an elementary statistics textbook which indicated such a number was insufficient for a chi-squared test. The plaintiff is not now barred from reinforcing the textbook with

live testimony on retrial relating to the statistical effect of low-numbered samples.

## DID THE COURT COMMIT ERROR IN LIMITING AND EXCLUDING TESTIMONY OF PLAINTIFF'S LABOR RELATIONS EXPERT?

The District Court denied plaintiff's offer of proof through the witness Allan D. Brown that the policies of the defendant were deficient in good personnel practices; that the defendant failed to act in good faith, based upon the information made available to Brown from the case; that the policies of the defendant in connection with the termination of personnel in a reduction of force proceedings were not adequate; that the manner of which Mahan was terminated was not conducted fairly through a good personnel policy; and that the actual termination of the plaintiff was unfair under all the circumstances of the case.

In denying the offer of proof, the District Court indicated that it would limit the testimony of the expert to the personnel manual then in existence, and that it would not permit the witness to testify as to his opinion that the company may have breached the implied covenant of good faith and fair dealing. The District Court indicated that it was basing its decision upon the cases of Crenshaw v. Bozeman Deaconess Hospital (1984), 213 Mont. 488, 693 P.2d 487, and Flanigan v. Prudential Federal Savings & Loan (Mont. 1986), 720 P.2d 257, 43 St.Rep. 941.

In Crenshaw, relying on Rule 702, M.R.Evid., that the testimony of an expert is admissible if it will "assist the trier of fact to understand the evidence or to determine a fact in issue," this Court said:

> The trier of fact's experience does not extend to Hospital disciplinary guidelines, much less the ability to evaluate the propriety of such guidelines. We find Dr. Vinton's perspective assisted

the jury to understand the evidence and ultimately the breach of implied covenant of good faith and fair dealing question at issue. Further, the Hospital's counsel moved in limine to exclude Dr. Vinton's testimony. The argument was presented to the trial judge. The trial court in its broad discretion admitted the expert testimony. The trial court's order will not be disturbed on appeal in the absence of a clear showing of a manifest abuse of discretion. [Citing cases.]

Crenshaw, 213 Mont. at 405, 693 P.2d at 495.

In Crenshaw, this Court also noted:

The instant case is not a scenario of simple facts. Fault arising from breach of implied covenant of good faith and fair dealing is not easily comprehensible to the average person. Dr. Vinton's testimony was based on professional expertise and experience which the individual jury members were unlikely to possess. Her testimony assisted the trier of fact by providing the jury with information and a prospective [sic] beyond the common experience of a lay juror. [Citing authority.]

Crenshaw, 213 Mont. at 502, 693 P.2d at 494.

In Flanigan, this Court approved the foregoing statements from Crenshaw, and went on to state that the District Court in Flanigan had acted properly in allowing expert testimony interpreting written employment policies of the employer.

It appears that the order of the District Court during trial correctly interpreted our holdings in both Crenshaw and Flanigan. In the case at bar, the court did permit experts for both parties to testify as to whether the company complied with or violated its own policies. That ruling, of course, followed Crenshaw and Flanigan.

As to whether the District Court erred in disallowing opinion testimony from the expert about the covenant of good faith and fair dealing, we are unable to say. The offer of proof did not include the specifics on which the proper

testimony of the expert witness would be based. We only restate that under _Flanigan_, based on _Crenshaw_, opinion testimony from expert witnesses considering the covenant of good faith and fair dealing is admissible, provided that foundation testimony is in the record, and the conditions of Rule 702, M.R.Evid., that the specialized knowledge of the expert will assist the trier of fact to understand the evidence or to determine the fact of issue are met. Though not explicitly stated in the record, it appears that part of the reason for the District Court's refusal of the offer of proof in this case was based upon the expert's background and experience, since he had made no study of nationwide policies and practices relating to terminations in reductions in force.

DID THE DISTRICT COURT ERR IN ALLOWING DEFENDANT'S STATISTICIAN TO TESTIFY AS TO WHAT WAS SIGNIFICANT STATISTICALLY IN SHOWING AGE DISCRIMINATION, RATHER THAN LIMITING HIS TESTIMONY TO EXPLAINING WHAT THE TESTS SHOWED IN THE SAME MANNER THAT PLAINTIFF'S STATISTICIAN WAS LIMITED?

Defendant's statistician, Ira Chorusa, testified as to three statistical tests that he applied to finish exhibit 13A, an exhibit through which plaintiff's expert had earlier testified which showed age discrimination. In response to a question from defendant's counsel as to whether he had found any statistical significance in the outcome of his tests, he responded:

A. Well, there is no statistical significance as an outcome of any of these tests.

Q. What does that mean?

A. What that means is that there is no evidence, based on these tests, that age was used as a factor.

- 14 -

The defendant's counsel objected on the grounds that the testimony went beyond what he was allowed when his expert was testifying. In chambers, the District Court examined the previous testimony of plaintiff's expert:

THE COURT: I have before me the series of questions that you posed to your expert that you had and the answers which you had typed in advance, Mr. Whalen, and the last question was, "What does that mean?" The answer which is typed, and as I recall, the answer was very close to this, if not almost verbatim, "It means that this result would occur by chance only 13% of the time, or conversely, the results are consistent with the pattern of discrimination as to age in terminating employees 87% of the time."

The District Court made it clear in the discussion in chambers that it would not permit either expert witness to testify that there was or was not actual age discrimination in this case. It appears that the answer of the defendant's expert came very close to stating that there was no evidence of age discrimination, although he may have been referring merely to plaintiff's exhibit 13A. In any event, we affirm the position of the District Court that on retrial the statisticians may testify that their statistical tests show or do not show patterns of discrimination based on age, but may not testify to the ultimate conclusion that age discrimination in his termination was or was not exercised against Wayne Mahan in this case. The jury should be the final arbiter of that issue. Rule 704, M.R.Evid.

SHOULD THE COURT HAVE INSTRUCTED THE JURY ON THE ISSUE OF RETALIATION?

It is an unlawful discriminatory practice for any employer to discriminate against an individual because he has filed a complaint, testified, or participated in any manner

in an investigation or proceedings before the Human Rights Commission. Section 49-2-301, MCA.

Plaintiff testified that he was retaliated against by his employer in that the employer refused to give him a letter of reference because he had sued the company, and that he was not included in the company and employee functions after he had sued the company.

Under the statutes, acts of retaliation for participating in proceedings before the Human Rights Commission are discrimination actions separate and apart from the claim of discrimination in the original proceedings. It might possibly be considered evidence of bad faith in the original termination of employment as well as in the retaliation. Plaintiff was therefore entitled to instructions to the jury based on his claim of retaliation, as it was for the jury to determine whether such retaliation actually existed. He was further entitled to comment on such retaliation in oral argument.

## DID THE DISTRICT COURT ERR IN REFUSING TO ADMIT TESTIMONY OF THE COMMISSIONER'S COMPLIANCE OFFICER, JERRY KECK?

In hearing the dispute between Mahan and Cenex, Keck found that there was "probable cause" to believe that Cenex discriminated against Mahan on the basis of age. Mahan offered the determination testimony at the District Court. Mahan directs our attention to Rule 803(8)(C) of the Federal Rules of Evidence which allows public records and reports.

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> (8) Public records and reports. Records, reports, statements or data compilations, in any form, of public officers or agencies, setting forth . . . (C) in

civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to an authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

However, the rule as adopted in Montana, Rule 803(8)(iv) M.R.Evid., states:

[Not excluded by the hearsay rule are] . . . records, reports, statements, or data compilations in any form of a public office or agency setting forth its regularly conducted and regularly recorded activities, or matters observed pursuant to duty imposed by law and as to which there was a duty to report, or factual findings resulting from an investigation made pursuant to authority granted by law. The following are not within this exception to the hearsay rule: . . . (iv) factual findings resulting from special investigation of a particular complaint, case, or incident.

The Commissioner's comments to the Montana Code provides that it adopted the uniform rule (1974), rather than the federal rule "because it was clearer than the Federal Rule and because it expressed better policy with certain reports in requiring the official to testify rather than admitting his report as a hearsay exception."

The Commission carefully considered the exceptions to Rule 803(8), before adopting the uniform rule. The very investigation information that the federal rule allows is specifically excluded in the Montana rule. The District Court did not err in excluding the testimony offered by Mahan.

Another consideration concerning whether the testimony of the compliance officer is allowable is whether as an

expert witness he can testify as to the determination he made for the Human Rights Commission. Rule 704, M.R.Evid., states:

> Opinions on ultimate issue.
> Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

The Advisory Committee's Note to Federal Rule 704 (the rule being identical to the Montana rule), 56 F.R.D. 183, 284-85 (1972) indicates:

> . . . that the "basic approach to opinions, lay and expert, in these rules is to admit them when helpful to the trier of fact." . . . the rule is not intended to allow all opinions and would exclude those "which would merely tell the jury what result to reach. . ."

It was Keck's intention to testify that he determined that Mahan had been discriminated against because of his age. This is a determination for the jury to make. The issue here is not so complex that the jury is not able to determine whether there was age discrimination. Moreover, there was other sufficient evidence offered by both parties from which the jury could make a reasonable determination of whether there was age discrimination.

OTHER SPECIFICATIONS OF ERROR

We determine that the court properly instructed the jury with respect to the issues of bad faith and implied covenant of good faith and fair dealing in this cause. We find no error in the offered instructions on these subjects which were refused by the court.

We conclude it was within the discretion of the District Court to exclude refinery yield statements; evidence respecting new construction at the refinery; whether the reduction

of force was caused by the mismanagement of the company; the relationship of the cost of labor to the cost of producing a refined product at the Laurel refinery; the benefits of Mahan's job to the company and his ability to fill the job; and the exclusion of exhibit 30 which does not particularly relate to age discrimination. Moreover, it was not error to allow defendant to offer evidence showing the necessity of the cost containment program which the defendant contends led to the reduction in force.

Accordingly, the judgment of the District Court is reversed, and the cause remanded to the District Court for further proceedings. Costs to plaintiff.

_____
Chief Justice

We concur:

_____

_____

_____

_____

_____

_____
     Justices

- 19 -

Justice John C. Sheehy, concurring and dissenting.

I concur with the majority opinion but dissent from its holding that the "reasonable cause" finding of the state Human Rights Commission and the testimony of its compliance officer are not admissible.

After his discharge, Mahan filed a complaint of age discrimination in employment with the Federal Equal Employment Opportunity Commission (EEOC). That agency deferred investigation of Mahan's complaint to the Montana Human Rights Commission. Mahan filed a perfected state complaint with the Montana Human Rights Commission on August 19, 1983, based on § 49-2-303, MCA.

After the Commission's staff investigated the complaint, it made a written finding of reasonable cause to believe Mahan had been subjected to age discrimination in his employment with Cenex. The written finding was made on August 16, 1984. On October 5, 1984, because the complaint had been pending for more than one year at that point (§ 49-2-509(1)(b), MCA), at the request of Cenex, the Commission issued a "right to sue letter." This procedure compelled Mahan to file a de novo action in District Court (§ 49-2-509(7), MCA.). Mahan filed his complaint in the District Court on December 6, 1984, including his age discrimination claim with other theories of recovery against Cenex.

In a special interrogatory, the jury found that Cenex was not guilty of age discrimination in terminating Wayne Mahan.

During the course of the trial the District Court ruled that Jerry Keck, the compliance officer of the Human Rights Commission, could not give testimony as to the regular procedures of the Human Rights Commission in investigating a

20

complaint of age discrimination or his testimony as to where he obtained the information used in making a finding. The court further ruled that the written reasonable cause finding issued by the Commission was not admissible. The Human Rights Commission found that 5 younger engineers were hired and that 4 older engineers were discharged. One engineer was hired just 6 months before notice was given to Mahan of his discharge. Mahan also offered testimony through Keck that by the action of Cenex in refusing severance pay to Mahan after he filed an age discrimination complaint, Cenex may have been in violation of the retaliatory provision of the Human Rights Act. (Section 49-2-301, MCA.)

The Human Rights Commission filed in this appeal an amicus curiae brief. The purpose of the amicus brief was to inform the court of the development of law on the admissibility of Commission findings, the testimony of its staff members, and the use of statistics gathered during investigation as "probative evidence."

The District Court refused the written finding of reasonable cause based on Rule 803(8)(iv), M.R.Evid. The court denied the oral testimony of Jerry Keck also.

Thus, there are two subissues which should be determined by us; one, whether the report of reasonable cause was admissible; and two, whether the oral testimony of Jerry Keck should have been allowed.

In Chandler v. Roudebush (1976), 425 U.S. 840, 48 L.Ed.2d 416, 96 S.Ct. 1949, the United States Supreme Court determined that such a report was admissible, relying on § 803(8)(c) of the Federal Rules of Evidence. Cenex contended before the District Court (and the District Court agreed) and now contends that the Rule 803(8) as adopted in Montana is different from the federal rule and therefore Chandler is not authority.

21

The pertinent part of Rule 803, M.R.Evid., is as follows:

Rule 803.    Heresay exceptions; availability of declarant immaterial.

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . . (8) Public Records and Reports.    To the extent not otherwise provided in this paragraph, records, reports, statements, or data compilations in any form of a public office or agency setting forth its regularly conducted and regularly recorded activities, or matters observed pursuant to duty imposed by law and as to which there was a duty to report, or factual findings resulting from an investigation made pursuant to an authority granted by law.   The following are not within this exception to the hearsay rule:   . . . (iv) factual findings resulting from special investigation of a particular complaint, case, or incident; and (v) any  matter as to which the sources of information or   other   circumstances   indicate   lack   of trustworthiness.

The Montana Supreme Court Commission on Rules of Evidence, in adopting what is now Rule 803(8) purposely departed from the federal rule.   It explained why in its comment contained in its report to this Court on November 3, 1976:

Exception (8).    Public records and reports. This exception is not the same as Federal Rule 803(8), but is identical to Uniform Rule (1974) 803(8).   The Commission chose to adopt the Uniform provision because it was clearer than the Federal Rule and because it expressed better policy with certain reports in requiring the official to testify, rather than admitting his report as a hearsay exception.
The guarantee of trustworthiness of this exception can be found partly under Exception (6), records of regularly conducted activity, partly under the assumption that official duty is regularly performed [R.C.M. 1947, Section

22

93-1301-7(14)] and "the unlikelihood that he will remember details independently of the record." Advisory Committee's Note, Supra 56 F.R.D. at 311.

This exception is consistent with existing Montana law except that it clarifies several areas where official reports are to be excluded. R.C.M. 1947, Section 93-1001-32, provides the entries in official books or records, made in the performance of official duty are prima facie evidence of the facts stated therein. R.C.M. 1947, Section 93-901-1, et. seq., the Uniform Official Reports as Evidence Act, modernizes this exception to the hearsay rule. Section 93-901-1, MCA, provides: "Written reports or findings of fact made by the officers of this state, on a matter within the scope of their duty as defined by statute, shall, insofar as relevant, be admitted as evidence of the matter stated therein." The adoption of the exception is intended to remove the restriction of admitting only reports from state officials, found in the statute and applied in Richardson v. Farmers' Union Oil Co., 131 Mont. 535, 553, 312 P.2d 134 (1957). Note that a police report was excluded in a civil case, but on grounds that it stated the cause of an injury, in Gagnier v. Zook, 141 Mont. 214, 377 P.2d 101 (1962). This exception is inconsistent with State v. Snider, 168 Mont. 220, 541 P.2d 1204, 32 St.Rep. 1056, 1062 (1975), which held a state chemist's report admissible under Section 93-901-1, RCM (1947), and so this case is overruled by this exception.

The comment of the Commission made it clear that in those cases where reports of agency action are refused, it is "better policy with certain reports in requiring the official to testify." The refusal therefore of the District Court to allow the testimony of Jerry Keck flies in the face of the reason adopted by the Commission in refusing the report in the first place.

There is an internal conflict within the present form of Rule 803(8). In the first sentence it makes admissible "factual findings resulting from an investigation made pursuant to authority granted by law." The authority of the

Human Rights Commission to investigate age discrimination cases is found in Chapter 2, of Title 49, MCA. Therefore under the first sentence of 803(8) its report of reasonable cause should have been admitted. However, subparagraph (iv) "factual findings resulting from special investigation of a particular claim, case or incident," seems to take away what is granted in the first sentence.

In the face of the ambiguity contained in Montana's § 803(8), the better practice is to follow the examples of the federal courts in construing the reports of the EEOC. The court of appeals for the Ninth Circuit strongly favors the admission of such reports as these in federal cases. Bradshaw v. Zoological Society of San Diego (1978), 569 F.2d 1066; Plummer v. Western International Motels Inc. (1978), 656 F.2d 502. In that Court of Appeals, whose jurisdiction includes Montana, under the federal system (it is also true in our system) the report to the Court of the Commission requires a de novo proceeding. The trier of fact therefore must determine from the beginning and on its own whether or not an infraction of the discrimination statutes occurred. The court said in Plummer:

> A civil rights plaintiff has a difficult burden of proof and should not be deprived of persuasive evidence. We therefore hold that the plaintiff has a right to introduce an EEOC probable cause determination in a Title VII lawsuit, regardless of what other claims are asserted, or whether a case is tried to a judge or jury . . .

656 F.2d at 505.

The weight, of course, of this evidence is for the jury to decide.

Amicus brief points to a jury instruction in Gilchrist v. Jim Slemons Imports, Inc. (9th Cir. 1986), 803 F.2d 1488, 1500-1501, wherein the Court approved:

24

The District Judge instructed the jury that "the letter need be given no greater weight than any other evidence in deciding the age discrimination claim" and "that you, the jury, and not the EEOC are the sole judges of whether or not there was a violation of the Age Discrimination Employment Act."

The reason for admitting such reports was expressed by Smith v. Universal Services, Inc. (5th Cir. 1972), 454 F.2d 154:

> . . . The action of the EEOC is not agency action of a quasi-judicial nature which determines the rights of the parties subject only to the possibility that the reviewing courts might conclude that the EEOC's actions are arbitrary, capricious or an abuse of discretion. Instead, the civil litigation at the district court level clearly takes on the character of a trial de novo completely separate from the actions of the EEOC. (Citation omitted.) It is thus clear that the report is in no sense binding on the district court and is to be given no more weight than any other testimony given at trial.
>
> This is not to say, however, that the report is inadmissible. A trial de novo is not to be considered a trial in a vacuum. To the contrary, the district court is obligated to hear evidence of whatever nature which tends to throw factual light on the controversy and ease its fact-finding burden.

454 F.2d at 157.

Though the Court of Appeals for the Ninth Circuit holds such reports admissible as a matter of right, its view of admissibility is by no means the minority view. Courts considering admissibility generally determine that the question is discretionary with the courts, and as the brief of amicus points out, without burdening this opinion with extraneous citations, reports are admissible as "significant evidence," as "discretionary," "absent prejudice," in the

exercise of "sound discretion," "admissible unless shown not trustworthy," and similar holdings.

We are also concerned about the impact that a ruling of inadmissibility for Commission reports would have on other areas of illegal discrimination. The Human Rights Commission concerns itself with not only age discrimination, but other discrimination in employment, in public accommodations, in housing, in financing and credit transactions, in education, in insurance and retirement plans, in maternity leave, and in discrimination by the state. Part 3, Chap. 2, Title 49, MCA.

The better view, to be consistent with the Ninth Circuit, is to hold such reports admissible, and for the trial court to instruct the jury to give such reports only the weight they should be accorded.

In like manner, the oral testimony of Jerry Keck should have been admitted by the District Court. As an agent of this State, making an investigation which is authorized by law, his findings of fact were admissible, and constituted probative evidence which would be an aid to the jury.

John C. Sheehy
_____
Justice

26

Justice R. C. McDonough dissents and concurs as follows:

I dissent. The trial court's ruling on Mahan's challenges to jurors for cause was not clearly erroneous, and I would affirm the jury's verdict. I concur, however, with the balance of the majority opinion.

If Mahan's objection for cause to the two jurors was for a legal cause, this Court would be in as good a position as the trial court to decide the question. Instead, Mahan's objection goes to the grounds of unqualified opinion, belief as to the merits, or existence of the state of mind evincing enmity against or biase in favor of a party. The majority has also alluded to Anderson's possible physical incompetency. Disqualification of a juror on any of these grounds is a question of fact to be decided by the trial judge. Rule 47(a), M.R.Civ.P.; Simons v. Jennings (1935), 100 Mont. 55, 46 P.2d 704. By the very nature of a jury selection proceeding, the challenging party bears the burden of proof that the proposed juror should be dismissed for cause. Sirotiak v. H.C. Price Co. (Alaska 1988), 758 P.2d 1271; City of Kotzebue v. Ipalook (Alaska 1969), 462 P.2d 75, 77; Borman v. State (Mich.App. 1967), 229 A.2d 440; State v. Davis (Ariz.App. 1983), 672 P.2d 480. For this Court to reverse a trial court's ruling on a question of fact, we must find that the ruling is clearly erroneous. Rule 52(a), M.R.Civ.P.

As with any trier of fact, the District Court has the advantage of observing a prospective juror's demeanor and the tenor of his answers. Nonverbal communication skills are important on voir dire in the selection of a jury. See, V. Starr & M. McCormick, Jury Selection (1985), Chapters 11, 12, 13 and 14. The look on a prospective juror's face sometimes indicates whether he correctly understands the question and

27

how his answer is to be taken. This Court discussed the nature of jury selection proceedings in Watson v. City of Bozeman (1945), 117 Mont. 5, 10-11, 156 P.2d 178, 181:

> While we feel that under the circumstances of this case, on proper motion, the trial court should call in other jurors, we cannot say that its failure to do so constituted an abuse of judicial discretion. As is said in State v. Russell, supra [73 Mont. 240, 235 P. 715]: "The examination of a juror on his voir dire is no more nor less than the taking of testimony on the issues raised as to his qualifications to serve in the case before the court. . . . The determination must be left largely to the sound discretion of the trial court (Scribner v. State, 3 Okla.Cr. 601, 108 Pac. 422, 35 L.R.A., N.S., 985; Commonwealth v. Minney, 216 Pa. 149, 65 A. 31, 116 Am.St.Rep. 763) and, in determining the question, the trial court, as in passing upon any other question of fact established by oral testimony, has the advantage of observing the witness on the stand, his demeanor and candor, or lack of candor, and a review of the court's rulings and findings should be governed by the same rules as in reviewing any other findings and judgment based thereon. They should not be set aside unless error is manifest, or there is shown a clear abuse of discretion."

It is clear from the colloquy among McCann, Anderson and the attorneys in this case that the jurors expressed an opinion, belief or preference. It is also clear, however, that the jurors said they would put these aside and follow the instructions of the court.

When jurors on voir dire make conflicting statements, it is a question of fact for the trial judge to decide whether they can act impartially. People v. Duncan (Cal. 1960), 350 P.2d 103; Rule 47(a), M.R.Civ.P. The statements made by these prospective jurors in response to questions by the court (and counsel for Cenex in Anderson's case) conflicted with their prior responses to questioning by counsel. The

court committed no manifest, clearly apparent, or obvious error, even in the "cold" record. The majority mischaracterizes the court's questions as too general. In reality, counsel's questions were as general or more general than those asked by the court.

The proper approach for deciding whether a juror is impartial is found in State v. White (1968), 151 Mont. 151, 155-56, 440 P.2d 269, 272. In White, this Court quoted State v. Allison (1948), 122 Mont. 120, 199 P.2d 279, and said:

> "It is a difficult matter at best to ascertain the real state of mind of a prospective juror with respect to detecting the existence of bias or prejudice against one accused of crime. For that reason this court has said (State v. Russell, 73 Mont. 240, 249, 235 P. 712, 715) that the determination of the qualification of a juror to serve in a case before the court 'must be left largely to the sound discretion of the trial court.' Again in State v. Huffman, 89 Mont. 194, 296 P. 789, 790, this court said: ' . . . the trial court is the judge of the weight to be given to the testimony adduced on a voir dire examination.' True, there are cases holding that when a witness has once admitted bias his subsequent statements that he can consider the evidence impartially should be viewed with caution. But granting the need for careful scrutiny of the testimony of a witness who has first said 'no' and then said 'yes,' it still remains the province of the trial court to decide where the truth lies and with that determination the appellate court will not interfere unless a clear abuse of discretion is shown. State v. Russell, supra."

Although this Court said in Watson and White that appellate courts would not interfere unless a clear abuse of discretion is shown, with the adoption of Rule 52(a), M.R.Civ.P., the test should be whether the court's decision is clearly erroneous.

The majority's reference to the constitutional right of a jury trial is inappropriate. Although Mahan's counsel was

forced to use two peremptory challenges on McCann and Anderson, he did not challenge the jurors who replaced them for cause. None of the members of the jury that eventually sat in this case were challenged for cause by Mahan's counsel. The right to four peremptory challenges is only statutory. See, § 25-7-224(1), MCA. The Legislature could raise or lower the number of challenges if it so desired. It is merely a means of obtaining a fair and impartial jury. There is no constitutional right to exercise peremptory challenges and the loss of such a challenge is not of constitutional dimension. Ross v. Oklahoma (1988), _____ U.S. _____, 108 S.Ct. 2273.

_____
Justice


Mr. Justice L. C. Gulbrandson:

I concur with Mr. Justice McDonough.

_____
Justice

IN THE SUPREME COURT OF THE STATE OF MONTANA

No. 87-005

WAYNE E. MAHAN,
    Plaintiff and Appellant,

v.

FARMERS UNION CENTRAL EXCHANGE,
INCS., doing business as
CENEX, a foreign corporation,
    Defendant and Respondent.

ORDER DENYING
PETITION FOR
REHEARING

The Court having considered the petition for rehearing of Farmers Union Central Exchange, Inc., and the response of Wayne E. Mahan, thereto,

IT IS ORDERED:

1. The Court strikes from its original opinion (P. 9, opinion) any reference that plaintiff's counsel used a preemptory challenge against juror Anderson.

2. In all else, the petition for rehearing is DENIED.

3. Copies hereof to counsel of record.

DATED this 13th day of March, 1989.

_____
Chief Justice

_____

_____

_____

_____
Justices

- 1 -

There is stricken from the dissent the two sentences commencing at the bottom of page 29 with the words "Although Mahan's" and ending on page 30 with the words "Mahan's Counsel."

Justices R.C. McDonough and L.C. Gulbrandson would grant the petition for rehearing.

_R.C. McDonough_

_L.C. Gulbrandson_

Justices
