No. 81-136

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

---

ANTOINETTE ABERNATHY, MOTHER OF JOHN
MARK ABERNATHY, and DAVID J. ABERNATHY,

Plaintiffs and Appellants,

vs.

ELINE OIL FIELD SERVICES, INC.,

Defendant and Respondent.

---

Appeal from: District Court of the Ninth Judicial District,
In and for the County of Pondera
Honorable R. D. McPhillips, Judge presiding

Counsel of Record:

For Appellants:

Hoyt and Trieweiler, Great Falls, Montana
Goetz, Madden and Dunn, Bozeman, Montana
James Goetz argued, Bozeman, Montana

For Respondent:

Robert J. Emmons argued, Great Falls, Montana

---

Submitted: May 13, 1982

Decided: September 9, 1982

Filed: SEP - 9 1982

Thomas J. Kearney
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

David Abernathy brought an action for personal injuries and his wife brought an action as representative of their deceased son John in the Ninth Judicial District, Pondera County, against Eline Oil Company. A jury returned a verdict for Eline, holding that David had suffered $20,000 in damages but could not recover because he was 75 percent comparatively negligent and that Eline's negligence was not a proximate cause of John's death. We vacate the judgment for defendant Eline.

The Abernathys raise the following issues:

(1) Did the trial court err in instructing the jury on the elements of assumption of risk as a form of negligence?

(2) Did the trial court err in failing to dismiss Juror Peterman for cause and in its examination of the juror?

(3) Whether the verdicts rendered by the jury are inconsistent and require reversal?

On the morning of January 19, 1979, David Abernathy and his 6 year old son, John, began a drive in the family 1977 Chevette from their home west of Dupuyer to Pendroy where John attended school. The weather conditions on Highway 89 included blowing snow, but the road was bare. David drove through two snowplow cuts on the highway, both of which had blowing snow and reduced visibility. As David hit a third cut, his car hit one drift which slowed his momentum and caused him to veer to the right side of the road. He then became stuck in the second drift perpendicular to traffic and in the right lane. He put the car in reverse but was unable to move it. He got out of his vehicle and saw that the front wheels were buried in the snow. David testified

that as he reached through the driver's door to get a shovel to dig the car out, the vehicle was struck. David was injured and John was killed.

The Abernathy vehicle was struck by a 16,000 pound, 1960 International truck, owned by Eline. The truck had left Cut Bank at 7:30 a.m., headed for a gas plant south of Dupuyer. The truck had been traveling approximately 40 miles per hour for most of the trip but had slowed to about 35 miles per hour just before the accident because of worsening weather conditions. The driver and a passenger first saw the Abernathy vehicle when it was 10 to 15 feet away and were unable to avoid hitting it.

I.

Did the trial court err in instructing the jury on the elements of assumption of risk as a form of negligence?

The following instruction was offered to and given by the trial court:

> "INSTRUCTION NO. 28.
>
> "In considering whether or not David J. Abernathy was contributorily negligent, you may consider, among other aspects of contributory negligence the question whether he placed himself in a position to chance known hazards. Thus, one aspect of contributory negligence exists if you find
>
> "1. That the Plaintiff had knowledge, actual or implied, of the conditions which existed at the time of and after Plaintiff's vehicle became stuck in the snow drift.
>
> "2. That he appreciated the condition as dangerous.
>
> "3. That he voluntarily remained or continued in the face of the known dangerous condition.
>
> "4. That injury resulted as the usual or probable consequence of this dangerous condition."

In offering the instruction, counsel for Eline relied on Kopischke v. First Continental Corp. (1980), ___ Mont.

___, 610 P.2d 668, 687, 37 St.Rep. 437, 462, where this Court stated that ". . . we will follow the modern trend and treat assumption of risk like any other form of contributory negligence and apportion it under the comparative negligence statute."  Section 27-1-702, MCA, provides:

> "Comparative negligence--extent to which contributory negligence bars recovery in action for damages.  Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or injury to person or property if such negligence was not greater than the negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of negligence attributable to the person recovering."

The Kopischke quote was taken from dicta.  This Court adopts the rationale used in Kopischke as being the proper basis for the present holding.

> "Once comparative negligence is adopted, implied assumption of risk can take on new and extraordinary importance; if plaintiff's assumption of risk continues to provide a separate defense, defendant avoids paying any damages. Clearly, the Supreme Courts of Florida, Maine, Minnesota, Montana, North Dakota, Texas, Washington, and Wisconsin did not believe that the policy underlying assumption of risk merited this drastic result.  Thus, those courts treated conduct that amounted to implied assumption of risk as if it was contributory negligence and allowed the jury to apportion damages accordingly."  Schwartz, Comparative Negligence (1981 Supp.)  § 9.4 at 170.

Rather than allow the harshness of the traditional assumption of risk defense,

> ". . .the plaintiff's conduct should be judged in terms of contributory fault and weighed against the causal negligence of the defendant. This approach avoids the harsh 'all or nothing' effect of assumption of the risk while at the same time permitting a defendant to reduce his liability for damages when he can demonstrate that the plaintiff's fault contributed to the injuries."  Wilson v. Gordon (Me. 1976), 354 A.2d 398, 402; Kopischke, 610 P.2d at 686, 37 St.Rep. at 461.

The California court in Li v. Yellow Cab Co. of Calif. (1975), 119 Cal.Rptr. 858, 873, 532 P.2d 1226, 1241, stated:

-4-

> "We think it clear that the adoption of a system of comparative negligence should entail the merger of the defense of assumption of the risk into the general scheme of assessment of liability in proportion to fault in those particular cases in which the form of assumption of risk involved is no more than a variant of contributory negligence." Kopischke, 610 P.2d at 687, 37 St.Rep. at 460.

Historically in Montana, the defense of assumption of risk required:

> "(1) knowledge, actual or implied, of the particular condition creating the risk, (2) appreciation of this condition as dangerous, (3) a voluntary remaining or continuing in the face of the known dangerous condition, and (4) injury resulting as the usual and probable consequence of the dangerous condition." Kopischke, 610 P.2d at 683, 37 St.Rep. at 458; Hanson v. Colgrove (1968), 152 Mont. 161, 447 P.2d 486, 488.

Instruction No. 28 given in the present case contains these elements of assumption of risk. Applying the proof to the standards set forth in Instruction No. 28, the jury could have found:

(1) That David had actual knowledge of the dangerous condition;

(2) That David had an appreciation of this being dangerous;

(3) That David remained at the vehicle in the face of the known danger; and

(4) That David's injury resulted as the probable consequence of the dangerous condition.

In applying Instruction No. 28 in this manner, the jury could have based their conclusions solely upon the thinking on David's part, that being his "subjective" knowledge. The jury then could have reached the conclusion that under Instruction No. 28 this assumption of risk constituted the 75 percent negligence which was included in the jury verdict on the part of David.

This illustrates the contradictory position in which the instructions placed the jury. In pertinent part Instruction No. 5 defined negligence in this manner:

> "When used in these instructions, negligence
> means want of. . .ordinary care or skill.
> Such want of ordinary care or skill exists
> when there is a failure to do that which a
> reasonable and prudent person would ordin-
> arily have done under the circumstances of
> the situation. . ."

The jury, based upon the evidence, could have concluded that David acted in the same manner as a reasonable and prudent person would ordinary have done under the circumstances of this case. If they reached that conclusion, under Instruction No. 5, there would have been an absence of "negligence" on David's part. Notwithstanding such a conclusion under traditional negligence doctrine, the jury still could have concluded that there was negligence under the above-described assumption of risk theory. We find these two approaches to be incompatible. This illustrates the contradiction present between the theories of assumption of risk and negligence. As pointed out in Kopischke, 610 P.2d at 684, 37 St.Rep. at 458, "'. . .[a]ssumption of risk is governed by the subjective standard of the plaintiff rather than the objective standard of the reasonable man. . .' Deeds v. United States (D. Mont. 1969), 309 F.Supp. 348, 363." The use of assumption of risk will only serve to confuse a jury in its attempt to determine the negligence on the part of all parties and to compare the same under our comparative negligence standard.

We therefore hold that the doctrine of implied assumption of risk is no longer applicable in Montana. In a retrial of this case, instructions on negligence and contributory negligence shall use the traditional standards of conduct of a reasonable and prudent person under the circumstances and shall not contain any of the assumption of risk standards contained in Instruction No. 28, and, in particular, shall not contain any of the subjective standards of assumption of risk as previously discussed here. In this case, we are not

ruling upon the application of the doctrine of assumption of risk in product liability cases.

## II.

Did the trial court err in failing to dismiss Juror Peterman for cause and in its examination of the juror?

During voir dire, the following questions were asked by plaintiff's counsel, Mr. Dunn, and answered by Mrs. Peterman:

"A.  I don't see how suing -- I do not understand this God bit myself.  I do not see how -- he is probably going through, you know, a lot of emotions and stuff, but I do not see how money will bring back his relationship to God.  I do not understand that at all.

"Q.  Let me ask you this.

"If the claim for damages were not the money that was going to try and compensate for a personal relationship, but the claim were more to the effect the difficulty he is having in that relationship prevents him from continuing the work he was doing, and, therefore, he loses that employment, would you be able to consider that?

"A.  I do not know.  I do not see where money brings happiness.  I cannot understand why people sue for the loss of a member of their family or -- I can see suing for like his expenses, damages, stuff like that, but I cannot follow how people, especially -- I understand that if he has lost his belief in God, he probably would not continue his work, because that is what his work was.  I do not understand how a court can award something like that.

"Q.  Then do you have some -- as you sit there, you have some reservation about awarding damages for what we call intangible items?

"A. Yes, I do.

".  .  .

"MR. DUNN:  I would ask the juror be excused.

"MR. EMMONS:  I resist.

".  .  .

"THE COURT:  I think we will excuse her.

"MR. EMMONS:  May I ask a question?

"THE COURT:  You may.

"MR. EMMONS: We are talking about 12 impartial people. The plaintiffs naturally prefer 12 jurors that will be basically preferential to them. The defendant prefers 12 people that will be preferential to the defendant; do you understand that?

"MR. DUNN: I object. I hope he is not speaking for himself.

"THE COURT: You may be excused.

"MR. EMMONS: I have a question for the Court, though.

"If this were a criminal case, and she was opposed to capital punishment, you could not exclude her from the jury. This is a personal injury, and because she has strong feelings about this type of damages not being awarded, does not mean she has to be excluded as a juror in this case.

"THE COURT: It is my understanding you have these personal beliefs, and they could well affect whether you would follow the law.

"MRS. PETERMAN: In my family, we have had -- my sisters have each lost children through accidents, and to me, that brings you closer to God, not away from Him. I just do not understand how people do this.

"THE COURT: I understand that. And you are entitled to that belief. And it is a belief many, many people have. My question is, because of that belief, would you be inclined to not follow the law which might award damages?

"MRS. PETERMAN: Again I find that hard. It is hard to say until I sat through, and listened to what he said about -- like if you do not believe in capital punishment -- it is hard to answer this question.

"THE COURT: I am aware of that. The only thing I want to do is be satisfied you would be impartial and would follow the law, aside from what you personally think the law should be.

"MRS. PETERMAN: I could sit; I am sure I could.

"THE COURT: You could decide the case aside from what you think the law should be, and follow the instructions of the Court?

"MRS. PETERMAN: Yes.

"THE COURT: Many times we have to lay aside our personal feelings.

"MRS. PETERMAN: Yes.

"THE COURT: I guess I will reverse the challenge."

During voir dire, Mrs. Peterman indicated that she had strong negative feelings about suing to recover money for the death of a child. Abernathys moved to challenge the juror for cause on the grounds that she could not render a fair and impartial verdict. The trial court initially granted the challenge, but then permitted defense counsel to examine and attempt to rehabilitate Mrs. Peterman. Following defense counsel's examination, the trial court conducted its own examination. The court then denied Abernathys' challenge for cause. At that point the Abernathys moved for a mistrial on the grounds that the colloquy between the court and Mrs. Peterman had influenced the panel to such a degree as to render a fair verdict impossible. The trial court denied the motion.

Section 25-7-223, MCA, provides:

"Challenges for cause may be taken on one or more of the following grounds:

". . .

"(6) having an unqualified opinion or belief as to the merits of the action;"

Our standard of review of denial of challenges has been stated:

"The examination of a juror on his voir dire is no more nor less than the taking of testimony on the issues raised as to his qualifications to serve in the case before the Court. (Citations omitted.) The determination must be left largely to the sound discretion of the trial court (Citations omitted.) and, in determining the question, the trial court, as in passing upon any other question of fact established by oral testimony, has the advantage of observing the witness on the stand, his demeanor and candor, or lack of candor, and a review of the court's rulings and findings should be governed by the same rules as in reviewing any other findings and judgment based thereon. They should not be set aside unless error is manifest, or there is shown

a clear abuse of discretion. . ." State v.
Williams (1979), ____ Mont. ____, 604 P.2d
1224, 1229, 36 St.Rep. 2328, 2334-2335; State
v. Russell (1925), 73 Mont. 240, 235 P. 712,
715.

We agree with the Abernathys that Mrs. Peterman showed
"an unqualified opinion or belief as to the merits of the
action." She should have been excused for cause. We find
that the failure to excuse Mrs. Peterman for cause was
manifest error. In addition, we point out that where a
trial court determines that considerable questioning by the
court is necessary, as was done in this case, such question-
ing should take place out of the presence of the remaining
members of the jury panel, thereby eliminating the possibility
of the prejudice claimed by the Abernathys.

Mrs. Peterman was excused as a juror when the Abernathys
exercised the first of their four peremptory challenges.
The Abernathys contend that it was prejudicial error to
compel a party to waste one of its peremptory challenges to
accomplish that which the trial judge should have done.
Several jurisdictions have considered this argument and
adopted it. The Utah Supreme Court remanded Crawford v.
Manning (Utah 1975), 542 P.2d 1091, 1093, for a new trial
and stated:

> "By exercising one of their peremptory chal-
> lenges upon this prospective juror, plain-
> tiffs had only two remaining. The juror
> which remained because the plaintiffs had
> no challenge to remove him may have been a
> hawk amid seven doves and imposed his will
> upon them.
>
> "A party is entitled to exercise his three per-
> emptory challenges upon impartial prospective
> jurors, and he should not be compelled to waste
> one in order to accomplish that which the trial
> judge should have done."

The Supreme Court of Arizona returning a case for a new
trial stated:

-10-

> "The right of a party to peremptory challen-
> ges is a substantial right of which he should
> not be deprived. (Citations omitted.) Per-
> emptory challenges form an effective method
> of assuring the fairness of a jury trial.
> Hence, forcing a party to use his peremptory
> challenges to strike jurors who should have
> been stricken for cause denies the litigant a
> substantial right." Wasko v. Frankel (1977),
> 116 Ariz. 288, 569 P.2d 230, 232.

However, not all jurisdictions agree with the interpreta-
tion of the Utah and Arizona courts. See: Colbert v.
Journal Pub. Co. (1914), 19 N.M. 156, 142 P. 146; Williams
v. Hendrickson (1962), 189 Kan. 673, 371 P.2d 188; Wilson v.
Ex-Cell-O Corp. (1968), 12 Mich.App. 637, 163 N.W.2d 492.

> "[T]he forced use of a peremptory challenge
> to excuse a juror, even if he should have
> been excused for cause, is not, in and of it-
> self, sufficient ground for reversal of a
> judgment in accord with the verdict." Love
> v. Harvey (Okla. 1968), 448 P.2d 456, 459.

While this Court agrees that the right of a party to
peremptory challenges is a substantial right, we do not hold
that every case of the forced use of a peremptory challenge
is a sufficient ground for reversal. In considering an
issue of the failure to dismiss a juror for cause, we hold
that the standard to be applied is whether there was an
abuse of discretion on the part of the trial judge. Discre-
tion, of course, should be granted to the trial judge in
these instances. Only where there is an abuse of this
discretion is there reversible error. In this case, the
actions of the District Court as previously set forth resulting
in a rebuilding of the juror constituted an abuse of discretion
and therefore constitutes reversible error.

### III.

Whether the verdicts rendered by the jury are inconsistent
and require reversal?

The special verdict asked the jury the following question
regarding the claim of David for himself:

"QUESTION NO. 1: Was the defendant herein, Eline Oilfield Services, Inc. (or its employee, William Kacsmarek), negligent, which negligence was a proximate cause of the injury to the plaintiff, David J. Abernathy?"

The jury answered "yes" to this question.

The special verdict later asked the jury the following question regarding the claim of Antoinette Abernathy for herself and on behalf of David J. Abernathy:

"QUESTION NO. 1: Was the defendant herein, Eline Oilfield Services, Inc. (or its employee, William Kacsmarek), negligent, which negligence was a proximate cause of the death of John Mark Abernathy?" The jury answered "no" to this question.

David was injured and his son, John, killed when their vehicle was struck by the Eline truck. Abernathys contend that the injury and death were caused by the identical mechanism and that if Eline was negligent in causing David's injury, it was logically negligent in causing John's death.

Eline contends that the verdicts are consistent because different questions are involved. The jury found that Eline was negligent and that this negligence was the proximate cause of David's injuries. As to the wrongful death case, the jury found that Eline was negligent but that this negligence was not a proximate cause of John's death. In one case, David got out of the automobile which was struck. In the other, David left the boy in the car which creates a proximate causation question.

This Court finds the argument of the Abernathys more persuasive. Both David's injuries and John's death occurred as a result of the Eline truck striking the Abernathy vehicle. The form of verdict shows that the jury concluded that the negligence of Eline was at least a proximate cause of the injury to David. Under the facts of this case, that conclusion

mandates a further conclusion that the negligence of Eline was also a proximate cause of John's death. That is true even though the jury might have concluded that the negligence of David was also a proximate cause of the death of John, or that David's negligence was the primary proximate cause of John's death.

When two conflicting verdicts are reached from the same evidence, a new trial is required. See: Utecht v. Steinagel (1972), 54 Wis.2d 507, 196 N.W.2d 674; Crohn v. Dupre (Minn. 1971), 190 N.W.2d 678; May v. Pittsburg Railways Co. (1966), 209 Pa.Super. 126, 224 A.2d 770.

We vacate and remand for a new trial.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

-13-