No. 93-322

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

ZACHARY P. MEAD,

      Plaintiff and Appellant,

  v.

M.S.B., INC., a Montana
corporation, d/b/a SNOWBOWL,

      Defendant and Respondent.

FILED

APR 12 1994

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Ed McLean, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Peter W. Kirwan (argued), Kirwan & Barrett,
Bozeman, Montana

    For Respondent:

        Gig A. Tollefsen (argued), Berg, Lilly,
Andriolo & Tollefsen, Bozeman, Montana

    For Amicus Montana Ski Areas Association:

        Mikel L. Moore (argued), Murphy, Robinson,
Heckathorn & Phillips, Kalispell, Montana

                   Submitted:  February 1, 1994

                     Decided:  April 12, 1994

Filed:

                         Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Plaintiff Zachary P. Mead filed his complaint in the District Court for the Fourth Judicial District in Missoula County to recover damages for injuries he sustained while skiing at the Snowbowl ski area, which is owned by the defendant, M.S.B., Inc. The District Court granted defendant's motion for summary judgment and dismissed Mead's claim. We reverse the judgment of the District Court.

The following issues are presented for appeal:

1. Are Snowbowl's duties limited to those listed in § 23-2-733, MCA (1989), of the Montana Skier Responsibility Act?

2. Did the District Court err when it concluded as a matter of law that Mead's injury resulted from "inherent risks" of skiing, as set forth in § 23-2-736, MCA (1989), of the Montana Skier Responsibility Act?

3. Other than those "inherent risks" set forth in the Montana Skier Responsibility Act, is assumption of risk, as opposed to contributory negligence, a separate defense which can be asserted by ski area operators to claims by injured skiers?

4. Did the District Court err when it found that Mead's claim was barred by his contributory negligence?

### FACTUAL BACKGROUND

On March 16, 1990, Zachary Mead was injured at the Snowbowl ski area while skiing down a trail known as the Bowl Outrun.

The bottom of several West-Ridge ski runs funnel into the Bowl Outrun trail, which then becomes the only means of return to Snowbowl's base area. The Bowl Outrun is a long trail, approximately 16 to 20 feet wide, cut into a steep mountainside.

While descending the Bowl Outrun Trail, Mead made turns by skiing onto the right bank of the trail and sideslipping back to the flat surface. There apparently were no markers designating the boundaries of the trail, and ski tracks indicated that others had used the banks of the trail in a similar fashion.

At some point on the trail, there is an abrupt right turn in combination with shale rock outcroppings on the trail's bank. Prior to the turn, the bank of the trail was exposed to the north and covered by snow. Just beyond the turn, the bank of the trail was exposed to the southeast and was either covered by less snow, or was uncovered. As Mead came around the right hand curve on the trail, he suddenly encountered the shale rock outcropping, which struck his knee, knocked him out of his skis, and caused serious injuries. Mead testified that earlier in the day he had observed bare spots on the bottom side of moguls he had skied, but that he had not skied the Outrun Trail previously that day, and that there was nothing about the trail prior to the curve which alerted him to the danger which caused his injury.

On November 14, 1991, Mead filed a complaint naming the owner of Snowbowl as the defendant. In his complaint, he alleged that while skiing at Snowbowl on March 16, 1990, he sustained serious

3

injuries to his right leg and knee due to defendant's negligent design, construction, and maintenance of the ski trail on which he was injured.

The ski area denied that it was negligent, and for affirmative defenses asserted: (1) statutory assumption of risk; (2) secondary assumption of risk; (3) waiver of defendant's negligence; and (4) contributory negligence.

On January 14, 1993, defendant moved the District Court to dismiss Mead's claim by summary judgment. That motion was granted by the District Court on April 23, 1993. In its opinion, the District Court concluded that "plaintiff's claim is the type of claim that the Montana Skier's Responsibility Act was enacted to prevent." However, the District Court failed to specify with particularity the provisions in the Act which barred Mead's claim. The District Court did apparently conclude that, based on Mead's general knowledge that spring conditions existed at the ski area, he should have been more alert for the hazard that caused his injury. The District Court also apparently concluded as a matter of law that the shale rock outcropping was a naturally occurring condition which resulted from weather changes, and that as a matter of law, defendant could not be found negligent for failing to remove or mark the rocks that caused Mead's injury.

On appeal, Mead contends that whether or not the rock outcropping which caused his injury was the kind of condition designated as an "inherent risk" of skiing in the Montana Skier

4

Responsibility Act was a question of fact, and that whether defendant and Mead were negligent, and if so, the degree of their comparative negligence, also presents issues of fact which precluded summary judgment.

Pursuant to our review of the District Court file, we note at this point that extensive discovery was apparently accomplished. Mead submitted at least three sets of discovery requests, including written interrogatories, requests for admission, and requests for production. Defendant, likewise, submitted written requests for discovery; and it appears that responses to both parties' discovery requests were served.

In addition, numerous depositions were scheduled, and apparently taken, by both parties. These include the depositions of Art Wear, the ski patrol member who investigated Mead's accident, and Don Bachman, an expert on ski area construction and design who was retained by Mead.

While the parties' briefs make frequent reference to the deposition testimony of Mead, Bachman, Wear, and Ralph Lasache, as well as to documents which were produced in response to requests for production, none of those fruits of discovery, other than the deposition of Mead, were filed in the District Court, nor have they been filed with this Court. Neither were any affidavits, either in support of or in opposition to defendant's motion for summary judgment filed in the District Court. Therefore, the facts, as set

forth in this opinion, are necessarily limited to those which can be gleaned from Mead's deposition.

In order to avoid confusion about the meaning of this opinion, we note that the result would be the same, even if we assume that the parties' representations in their briefs about the various witnesses' testimony are correct. However, we wish to make it clear that it is not permissible on appeal to this Court to quote from discovery that has not been filed in the District Court and sent to the Clerk of the Supreme Court.

Based on the record before us, defendant has presented no evidence to controvert Mead's claim in his complaint that it was negligent. However, defendant does argue that Mead's claim is barred as a matter of law, and that the District Court's summary judgment should be affirmed for several reasons. Defendant contends that: (1) a ski area's only duties to its paying guests are those which are set forth in § 23-3-733, MCA (1989), and since Mead's complaint did not allege a breach of any of those duties, he has not set forth a viable claim as a matter of law; (2) Mead's claim is barred by § 23-2-736(4), MCA (1989), because it resulted from conditions or activities which are designated as "risks inherent in the sport of skiing;" and (3) even if Mead's claim is not barred for either of the two previous reasons, the common law defense of assumption of risk should be available to ski area operators, and pursuant to that defense and the undisputed facts, Mead's claim is barred as a matter of law.

## STANDARD OF REVIEW

Our standard of review in appeals from summary judgment is *de novo*. We review a summary judgment utilizing the same criteria used by the District Court initially under Rule 56, M.R.Civ.P. *Minnie v. City of Roundup* (1993), 257 Mont. 429, 431, 849 P.2d 212, 214. We determine whether there is an absence of genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law. *Minnie*, 849 P.2d at 214.

*Brinkman and Lenon v. P & D Land Enterprises* (Mont. 1994), 867 P.2d 1112, 1114, 51 St. Rep. 36, 37.

We also noted in *Brinkman* that:

It is clear that a party moving for summary judgment bears the initial burden of establishing the absence of any genuine issue of material fact and its entitlement to judgment as a matter of law. . . .

. . . .

. . . Put another way, the nonmoving party has no obligation to establish that genuine issues of fact exist until the moving party has shown an absence of such issues of fact; unless that initial burden is met by the moving party, the nonmoving party may rest on its pleading. *Minnie*, 849 P.2d at 214.

*Brinkman*, 867 P.2d at 1115.

It is the exceptional negligence case that may be properly disposed of by summary judgment. *Brohman v. State* (1988), 230 Mont. 198, 202, 749 P.2d 67, 70. Negligence involves questions of fact, and where a factual controversy exists, summary judgment is never to be used as a substitute for trial. *Kaiser v. Town of Whitehall* (1986), 221 Mont. 322, 718 P.2d 1341. Only where reasonable minds cannot differ may the court, as a matter of law, decide the cause of an accident. *Brohman*, 749 P.2d at 70.

The Montana Ski Areas Association, which has appeared in this case as amicus curiae, asks that we abandon our rule for summary judgment and adopt the modern federal rule which, according to the Association, would allow the Court to evaluate the evidence and determine whether a "reasonable jury" could find in favor of the party opposing the motion. However, this rule would present a substantial erosion of the constitutional right to trial by jury and we decline to adopt it.

## ISSUE 1

Are Snowbowl's duties limited to those listed in § 23-2-733, MCA (1989), of the Montana Skier Responsibility Act?

Mead alleged that defendant was negligent with regard to the design, construction, and maintenance of the Bowl Outrun trail. He further alleged that defendant was negligent for failing to fence the bank or otherwise mark the bank to prevent skiers from skiing into the rock outcropping.

In response to Mead's allegations of negligence, defendant asserts that its duties are limited to those set forth in § 23-2-733, MCA (1989), and that since Mead did not allege any breach of these statutory duties, defendant is entitled to judgment as a matter of law.

In support of its argument that ski area operators do not owe duties to skiers, other than those listed in the Act, defendant sets forth an extensive discussion of the history of common law liability in the ski area industry and skier responsibility acts

adopted in various jurisdictions. However, our resolution of this issue is controlled by the plain language of the Montana Skier Responsibility Act and our own prior decision in *Brewer v. Ski-Lift, Inc.* (1988), 234 Mont. 109, 762 P.2d 226.

The Montana Skier Responsibility Act was originally enacted in 1979, and was found at §§ 23-2-731 through -737, MCA (1979). In its original form, it provided, at § 23-2-736, MCA (1979), that:

> A skier assumes the risk of all legal responsibility for injury to himself or loss of property that results from participating in the sport of skiing by virtue of his participation.

In *Brewer*, the plaintiff was injured while skiing at the Showdown ski area when he fell on a tree stump which was just beneath the surface of the snow. He contended that the stump was not in the location where he encountered it as a natural occurrence, but had been placed there negligently by the ski area operator. However, based upon the quoted language, the district court concluded that even if the facts alleged by the plaintiff were assumed to be true, the ski area was entitled to judgment as a matter of law pursuant to the Skier Responsibility Act. In analyzing whether the provisions of the Act violated the Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, and Article II, Section 4, of the Montana Constitution, we observed the following critical facts about the Act:

> In substance, the underscored portions provide that a skier assumes the risk and all legal responsibility for

9

injury to himself that results from participating in skiing; and that the responsibility for collisions with an object is the responsibility of the skier and not the responsibility of the ski area operator; and finally, that notwithstanding the comparative negligence law of Montana, a skier is barred from recovery from a ski area operator for loss from any risk inherent in the sport of skiing, thereby eliminating the theory of comparative negligence. A fair reading of the underlined portions of the above statutes prohibits the skier from obtaining legal recourse against an operator even if the injury is proximately caused by the negligent or even intentional actions of the operator.

*Brewer*, 762 P.2d at 230.

Based on these observations, we concluded that protecting the operators of ski areas from liability for their own negligence bore no relationship to protecting them from liability from inherent risks in the sport of skiing, and therefore, that the objectionable parts of the Act violated the equal protection clauses of both the Federal and State Constitutions. In so holding, we stated that:

Although the state has a legitimate interest in protecting the economic vitality of the ski industry, there is no rational relationship between this purpose and requiring that skiers assume all risks for injuries regardless of the cause and regardless of the presence of negligence or intentional conduct on the part of the ski area operator. As we read the above underscored portions of Sections 23-2-736 and 23-2-737, MCA, we conclude that these portions of the statutes are needlessly overbroad and clearly go far beyond the stated purposes of the statutes as set forth in Section 23-2-731, MCA. Applying the test referred to in *Hooper [v. Bernalillo County Assessor (1985), 472 U.S. 612, 105 S. Ct. 2862, 86 L. Ed. 2d 487]*, we conclude that the underscored portions of these two statutes cannot pass even a minimum rationality test. These provisions are not related to inherent risks in the sport of skiing which are essentially impossible to eliminate by the ski area operator as stated in Section 23-2-731, MCA. We conclude that these provisions fail to pass the minimum rationality test for the following reasons: there is nothing in the legislation to suggest a reason to require

10

that a skier assumes the risk and legal responsibility for injury to himself and for collisions and that there is no responsibility on the part of the ski area operator. Such provisions eliminate any theory of negligence on the part of the ski area operator. This contradicts Section 27-1-701, MCA, under which a person is responsible for an injury resulting from his want of ordinary care.

*Brewer*, 762 P.2d at 230.

In response to the *Brewer* decision, the Legislature amended several provisions of the Skier Responsibility Act in 1989. The language in § 23-2-731, MCA (1979), which set forth the purpose of the Act, was amended to point out that skiing is a major industry in Montana and that the State, therefore,

has a legitimate interest in maintaining the economic viability of the ski industry by discouraging claims based on damages resulting from risks inherent in the sport, defining inherent risks, and establishing the duties of skiers and ski area operators.

Section 23-2-731, MCA (1989).

Section 23-2-733, MCA (1979), was amended in 1989 to provide:

Consistent with the duty of reasonable care owed by a ski area operator to a skier, a ski area operator shall:
    (1) mark all trail grooming vehicles by furnishing the vehicles with flashing or rotating lights that must be in operation whenever the vehicles are working or are in movement in the ski area;
    (2) mark with a visible sign or other warning implement the location of any hydrant or similar equipment used in snowmaking operations and located on ski trails;
    (3) maintain one or more trail boards at prominent locations at each ski area displaying that area's network of ski trails and the relative degree of difficulty of the ski trails at that area;
    (4) post a notice requiring the use of ski-retention devices;
    (5) designate at the start of each day, by trail board or otherwise, which trails are open or closed and

11

amend those designations as openings and closures occur during the day;

(6) post in a conspicuous location the skier responsibility code that is published by the national ski areas association and that is current on [the effective date of this Act]; and

(7) post a copy of 23-2-736 in a conspicuous location.

Section 23-2-736, MCA (1979), was amended so that instead of assuming responsibility for all injuries resulting from merely participating in the sport of skiing, inherent risks which are assumed by the skier are identified. Section 23-2-737, MCA, which previously eliminated the application of comparative negligence to ski injuries, was repealed.

It is the amended § 23-2-733, MCA (1989), which defendant contends establishes its exclusive duties to Mead. However, we cannot construe the statute in that fashion for two reasons.

First, this Court's role in statutory construction is simply to "ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted . . . ." Section 1-2-101, MCA. In neither the original enactment of § 23-2-733, MCA (1979), nor in the 1989 amendment of that statute, did the Legislature provide that a ski area operator's only duties were those provided in that section and that there was no duty of due care owed by operators to skiers. That duty is, however, imposed by § 27-1-701, MCA. In fact, the 1989 amendment appears to reinforce that duty when it states that the statutorily enumerated duties must be "consistent with the duty of reasonable care owed by a ski area operator to a skier . . . ."

12

Second, an interpretation of a statute which gives it effect is preferred to one which renders it void. Section 1-3-232, MCA. Were we to accept the interpretation of § 23-2-733, MCA (1989), which is suggested by defendant, it would be immune from liability for its negligent or intentional acts if not itemized in that section. The Skier Responsibility Act would then suffer from the same constitutional infirmity which we addressed and have previously discussed in *Brewer*. We presume that the Legislature amended the Skier Responsibility Act with those constitutional considerations in mind, and will not construe the statute in a manner that would render it unconstitutional.

For these reasons, we conclude that defendant's duties to plaintiff were not limited to those listed in § 23-2-733, MCA (1989), of the Montana Skier Responsibility Act.

## ISSUE 2

Did the District Court err when it concluded as a matter of law that Mead's injury resulted from "inherent risks" of skiing, as set forth in § 23-2-736, MCA (1989), of the Montana Skier Responsibility Act?

Section 23-2-736, MCA (1989), sets forth a skier's duties and identifies those inherent risks in the sport of skiing from which a ski area operator is relieved from liability. That part of the statute which defendant contends entitles it to judgment as a matter of law provides as follows:

> (4) A skier must accept all legal responsibility for injury or damage of any kind to the extent that the

13

injury or damage results from risks inherent in the sport of skiing. Risks inherent in the sport of skiing are:

    (a) variations in skiing terrain, including surface and subsurface snow or ice conditions naturally occurring or resulting from weather changes, skier use, or grooming or snowmaking operations;

    (b) bare spots and thin snow cover caused by limited snowfall, melting, wind erosion, skier action, grooming, or unconsolidated base;

    . . . .

    (d) skiing in an area not designated as a ski trail

. . . .

While the District Court referred to all three of these subsections in its memorandum in support of its order granting summary judgment, it seems to have primarily relied on its conclusion that the rock outcropping was a "naturally occurring condition resulting from weather changes." However, while subsection (a) refers to naturally occurring "snow or ice" conditions resulting from weather changes, and while subsection (b) refers to "bare spots" resulting from "limited snowfall" or "melting," neither subsection defines the exact condition identified by the District Court as an "inherent risk." Therefore, we will discuss each of the subsections relied on by defendant to determine whether that subsection bars Mead's claim as a matter of law.

According to Mead's testimony, he was not injured by a variation in skiing terrain. In fact, his skis never did come into contact with the rocky outcrop which apparently protruded from a nearly vertical surface and struck him in the knee. Furthermore, to conclude that the rocky structure which caused Mead's injury was part of the "skiing terrain" is contrary to defendant's assertion

14

that at the time of his injury, Mead was no longer on designated ski terrain, but had left the trail. Therefore, we conclude that the condition to which Mead attributes his injury was not a "variation in skiing terrain."

Whether the exposed rocks which caused Mead's injury were "bare spots caused by limited snowfall, melting, wind erosion, or skier action" is more problematic. Mead describes skiing on the banked part of a ski trail when he unexpectedly encountered a rocky outcropping from a nearly vertical surface along the ski trail. There is no indication in the record whether the rocky outcropping would normally be covered with snow at that location, and if so, whether the amount of snow which normally covered the surface would have been sufficient to prevent the kind of injury that occurred in this case. The resolution of those issues necessarily involves questions of fact which have not been adequately developed in the record before us, and which are disputed, even if we accept the factual assertions of the parties made in their briefs. Therefore, we conclude that an inherent risk pursuant to § 23-2-736(b), MCA (1989), has not been established as a matter of law in this case. Whether such a condition was the cause of Mead's injury presents a question of fact which must be resolved by the trier of fact.

Neither has it been established by the uncontroverted facts that Mead was skiing beyond the designated trail at the time of his injury. As mentioned, the only evidence before us is Mead's deposition. He testified that there were tracks from other skiers

15

in the area where he was injured, and noted that the same existed on the photos shown to him by defendant at the time of his deposition. No admission was made, nor solicited, at the time of his deposition that he skied beyond the boundaries of the trail. Even if we accept the representations that the parties made in their appellate briefs, we conclude that, at most, an issue of fact was raised regarding the applicability of this subsection to this case.

Defendant represents that Arthur Wear, the ski patrol member who investigated Mead's injury, testified that the point of Mead's collision was several feet from the edge of the trail. However, nowhere have we been advised that the edge of the trail was designated so that skiers knew where it began and where it ended. Merely asserting after the fact that a skier was several feet beyond the trail when the statute refers to the "designated" trail does not satisfy the statute.

Mead, on the other hand, represents that Forest Service maps show that he was on the trail at the time of his injury and that the area where he was injured was commonly skied by others. We conclude that whether or not the place where Mead's injury occurred was designated by defendant as beyond the ski trail presents an issue of fact to be decided by the finder of fact after consideration of all the evidence.

### ISSUES 3 AND 4

Other than those "inherent risks" set forth in the Montana Skier Responsibility Act, is assumption of risk, as opposed to

16

contributory negligence, a separate defense which can be asserted by ski area operators to claims by injured skiers?

Did the District Court err when it found that Mead's claim was barred by his contributory negligence?

Finally, defendant contends that ski area operators should be able to rely on the affirmative defense of what it describes as "secondary assumption of risk," and that based on the facts in this case, defendant is entitled to judgment as a matter of law based on that defense. In support of its argument, defendant submits that Mead was generally aware of spring-like weather conditions and exposed surface areas in other parts of the ski area, had been warned about rocks and variations in terrain on signs and on his ticket, and therefore, actual notice of the specific condition which caused his injury should be imputed to him.

We note, however, that assumption of risk is no longer available as a separate affirmative defense in negligence claims, and that in those cases where we do allow such a defense, knowledge of the specific danger which causes the claimant's injury is required. *See Abernathy v. Eline Oil Field Services, Inc.* (1982), 200 Mont. 205, 209, 650 P.2d 772, 775.

Defendant acknowledges that in *Abernathy*, 650 P.2d at 775-76, we held that the doctrine of implied assumption of risk is no longer applicable in Montana, and that instead, the conduct of the parties should be compared based upon evidence of negligence and contributory negligence, as established by reasonable and prudent person standards. We adopted the following rationale from the

17

California Court in *Li v. Yellow Cab Company of California* (1975), 13 Cal.

3d 804, 825, 119 Cal. Rptr. 858, 873, 532 P.2d 1226, 1241:

> We think it clear that the adoption of a system of comparative negligence should entail the merger of the defense of assumption of the risk into the general scheme of assessment of liability in proportion to fault in those particular cases in which the form of assumption of risk involved is no more than a variant of contributory negligence.

However, defendant contends that we should carve out an

exception to *Abernathy* for the ski industry as we did for product

manufacturers in *Zahrte v. Sturm Ruger and Company, Inc.* (1983), 203 Mont.

90, 661 P.2d 17. In that case we held that:

> In summary, assumption of risk is an available defense in a strict liability case. The defense must establish that plaintiff voluntarily and unreasonably exposed himself to a known danger. If the defense is found to exist, then plaintiff's conduct must be compared with that of the defendant.

*Zahrte*, 661 P.2d at 19.

The rationale for allowing the common law defense of

assumption of risk in strict liability cases is not present in

claims based on negligence, and therefore, we decline to apply the

same exception to negligence claims against ski area operators.

Specifically, we stated in *Zahrte*, 661 P.2d at 18, that "we felt

that a defense should be retained for strict liability actions and

that assumption of risk may be the appropriate defense." We felt

that way because contributory negligence was not an available

defense in strict liability actions. It is, however, an available

18

defense in negligence claims, and therefore, we find the reasoning in *Abernathy* more persuasive.

Analyzing Mead's conduct under the objective standards which apply to contributory negligence, we conclude that the District Court erred by dismissing Mead's claim as a matter of law. First of all, we reiterate that:

> Ordinarily, issues of negligence are questions of fact not susceptible to summary adjudication. *Brohman v. State* (1988), 230 Mont. 198, 201, 749 P.2d 67, 69. Liability should not be adjudicated upon a motion for summary judgment where factual issues concerning negligence and causation are presented. *Duchesneau v. Silver Bow County* (1971), 158 Mont. 369, 377, 492, P.2d 926, 931.

*Dillard v. Doe* (1992), 251 Mont. 379, 382, 824 P.2d 1016, 1018-19.

As we noted in *Dillard*, issues of comparative negligence are especially difficult to resolve as a matter of law.

In this case, Mead has alleged that defendant negligently designed, constructed, and maintained the ski trail on which he was injured. Defendant, on the other hand, alleges that Mead was negligent by disregarding warnings on his ticket, and on its signs, and what he should have known from his observation of conditions at other areas throughout the ski area.

There is no evidence that Mead was aware of the particular condition which he alleges caused his injury, nor that he had skied the trail recently enough that he should have been aware of it.

Whether Mead should have been aware of the condition which caused his injury and exercised greater care to avoid it, and if

so, the degree of his own negligence compared to the negligence of defendant, if any, are issues of fact to be resolved by the trier of fact in this case.

Therefore, we hold that the defense of assumption of risk, other than as specified in the Skier Responsibility Act, is not a separate defense in a claim by skiers for injuries which are alleged to result from the negligence of ski area operators, and that whether Mead and defendant were negligent, and if so, how their negligence compares, presents issues of fact to be resolved by the finder of fact in this case.

The judgment of the District Court is reversed and this case is remanded to the District Court for further proceedings consistent with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

20