No. 98-600

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 239N

PATRICIA A. CUNNINGHAM,

Plaintiff and Respondent,

v.

NEV HARDING, d/b/a HARDING RANCH,

Defendant and Appellant.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Carbon,

The Honorable Diane G. Barz, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Ira Eakin, Attorney at Law; Billings, Montana

For Respondent:

Brad Arndorfer, Arndorfer Law Firm; Billings, Montana

Submitted on Briefs: May 27, 1998

Decided: October 5, 1999

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

¶ **Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.**

¶ **The Plaintiff, Patricia Cunningham, filed this action in the District Court for the Thirteenth Judicial District in Carbon County, for claim and delivery of four horses in the possession of the Defendant, Nev Harding. Harding counterclaimed asserting that he had repurchased the four horses or alternatively, was entitled to payment for caring for the horses. The District Court granted the Plaintiff's motion for summary judgment. The Defendant appeals from that judgment. We reverse the judgment of the District Court.**

¶ **The issues on appeal are:**

¶ 1. Did the District Court err when it concluded there was no contract between the Plaintiff and the Defendant for repurchase of the Plaintiff's horses?

¶ 2. Did the District Court err when it held as a matter of law, that the Defendant's agister's lien was unenforceable because the amount claimed was unreasonable?

¶ In August 1997, Cunningham purchased four horses from Harding for $11,000, and Harding issued Cunningham a bill of sale. After the sale, Cunningham transported the horses from Harding's ranch in Edgar, Montana to her home in Colorado. In November 1997, Harding was returning to Montana from Texas when he stopped in Colorado to visit Cunningham, who was preparing to have surgery. Harding offered to care for the horses in Montana until Cunningham recovered from her surgery. In an affidavit filed by Harding in this proceeding, he stated that he and Cunningham agreed that she would pay his usual fee of $10 per day per horse. In an affidavit filed by Cunningham, she contends Harding offered to care for her horses free of charge.

¶ Cunningham further alleges that in January of 1998, after she recovered from surgery, she notified Harding that she was driving to Montana to retrieve her horses, but that he refused to return them. Harding alleges he did not return the horses because he had entered into an agreement with Cunningham to repurchase them from her.

¶ Harding stated in his affidavit that he contracted with Cunningham to repurchase the horse named Jax Roses in November 1997 for $4000; that he made an "earnest money deposit" of $500; and that he made one payment of $500. He also stated that he contracted with Cunningham to repurchase the horse named Zans Parr Jax in January 1998 for the "original purchase price." According to Harding, he had no money, but Cunningham agreed to accept payment later. Harding further stated in his affidavit that through her agent, Pete Olsen, Cunningham offered to sell the remaining two horses back to him; that he accepted the offer; and that he made an "earnest money deposit" of $4000.

¶ In February 1998, Harding filed an agister's lien against all of the horses for the amount of $11,773 plus $10 per day per horse for each day thereafter. Harding stated in his affidavit that the agister's lien was for costs of care, transport, and state inspection of Cunningham's horses.

¶ Harding claims that he is entitled to ownership and possession of the horses or alternately, that he is entitled to payment for caring for Cunningham's horses. Harding's claim is also supported by the affidavit of June Shorten, who claims to have overheard the parties agree to the repurchase of Jax Roses, Zans Parr Jax, and the remaining two horses from Cunningham.

¶ Cunningham claims that she is entitled to ownership and possession of the horses. The District Court granted summary judgment in favor of Cunningham.

## STANDARD OF REVIEW

¶ We review appeals from summary judgment de novo. *Motaire v. Northern Montana Joint Refuse Disposal Dist.* (1995), 274 Mont. 239, 242, 907 P.2d 154, 156; *Mead v. M.S. B., Inc.* (1994), 264 Mont. 465, 470, 872 P.2d 782, 785. When we review a district court's order which grants summary judgment, we apply the same standards as the district court based on Rule 56, M.R.Civ.P. *Bruner v. Yellowstone County* (1995), 272 Mont. 261, 264, 900 P.2d 901, 903. In *Bruner*, we set forth our inquiry:

The movant must demonstrate that no genuine issue of material fact exists. Once this has been accomplished, the burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue of fact does exist. Having determined that genuine issues of material fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. We review the legal determinations made by a district court as to whether the court erred.

*Bruner*, 272 Mont. at 264-65, 900 P.2d at 903 (citations omitted).

## ISSUE 1

¶ Did the District Court err when it concluded there was no contract between the Plaintiff and the Defendant for repurchase of the Plaintiff's horses?

¶ A contract is an agreement to do or not to do a certain thing. § 28-2-101, MCA. The essential elements of a contract are: (1) identifiable parties capable of contracting; (2) their consent; (3) a lawful object; and (4) a sufficient cause or consideration. Section 28-2-102, MCA; *Interstate Prod. Credit Ass'n v. Abbott* (1986), 223 Mont. 405, 408, 726

P.2d 824, 826. Harding does not dispute that in August 1997 he sold four horses to Cunningham for $11,000, but he argues that he has established a "prima facie case for the existence of a valid, enforceable, partly performed, oral agreement for the purchase of the horses back from [Cunningham]." Harding alleges three different agreements to repurchase the horses.

¶ Harding stated in his affidavit that he entered into a contract with Cunningham to repurchase Jax Roses in November 1997 for $4000, and that he gave Cunningham $500 as an "earnest money deposit" which Cunningham accepted. Harding further stated that in January 1998 he sent Cunningham a check for $500 as payment for Jax Roses. Harding's claims are supported by his affidavit and by the affidavit of Shorten, who stated that both Harding and Cunningham told her that Harding was buying back the mare named Rose.

¶ Harding stated in his affidavit that in January 1998 he entered into a contract with Cunningham to repurchase Zans Parr Jax for "the original purchase price." Harding stated that although he had no money at the time, Cunningham agreed to accept payment later. Shorten stated that after Harding returned from Colorado with the horses, he was going to buy back the colt Zans Parr Jax because the colt was too much for Cunningham to handle.

¶ Harding stated in his affidavit that Cunningham offered to sell the remaining two horses back to him; that he accepted the offer; and that he made an "earnest money deposit" of $4000. Shorten states that she was present at the Harding Ranch when Olson presented Harding with an offer from Cunningham to repurchase the horses. Shorten said that Harding accepted the offer and that Harding instructed her to deliver Harding's $4000 check to Cunningham via "UPS overnight."

¶ In its summary judgment order the District Court found that Harding's allegations were too vague and that no contract existed between Harding and Cunningham. We disagree and conclude that Harding presented sufficient evidence of the essential elements of a contract to create a factual dispute which could not be resolved by summary judgment. Therefore, we conclude that the District Court erred when it concluded as a matter of law there was no contract between the parties for the repurchase of the Plaintiff's horses.

ISSUE 2

¶ Did the District Court err when it held as a matter of law, that the Defendant's agister's lien was unenforceable because the amount claimed was unreasonable?

¶ In February 1998, Harding filed an agister's lien against all of the horses for the amount of $11,773 plus $10 per day per horse for each day thereafter. An agister is "one who takes in horses or other animals to pasture at certain rates." Black's Law Dictionary 88 (4th ed. 1968). An agister's lien arises from breach of an agistment agreement. "The term agistment is characterized by an agreement in which one person agrees to care for and feed animals of another for a consideration, either at a named price or for the reasonable value of the services rendered." *Heckman and Shell v. Wilson* (1971), 158 Mont. 47, 57, 487 P.2d 1141, 1146. An agister's lien is based on a contract, either expressed or implied. *In re Estate of Bolinger*, 1998 MT 303, ¶ 46, 292 Mont. 97, ¶ 46, 971 P.2d 767, ¶ 46; § 71-3-1201, MCA.

¶ Harding stated in his affidavit that he and Cunningham agreed that while Cunningham recovered from surgery, Harding would care for her horses and that Cunningham would pay Harding's standard fee of $10 per day per horse. Shorten's affidavit supports this allegation. Shorten stated that Harding agreed to transport the horses from Colorado to Montana and take care of them while Cunningham recovered from her surgery.

¶ Pete Olsen, from the Department of Livestock, states in his affidavit that a reasonable cost for boarding horses is $25 to $30 per month. The District Court held that because the amount claimed by Harding was not the going rate, Cunningham was entitled to summary judgment dismissing Harding's lien claim.

¶ We conclude that the District Court could not determine as a matter of law what was or was not a reasonable rate for boarding horses and that, the conflict created by Harding's and Olsen's affidavits, simply created an issue of fact which cannot be resolved by summary judgment

¶ Therefore, we conclude that the District Court erred when it held as a matter of law that the Defendant's agister's lien was unenforceable.

¶ The judgment of the District Court is reversed. This case is remanded to the District Court for trial of the factual issues raised by the parties' conflicting claims.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ JIM REGNIER

/S/ WILLIAM E. HUNT, SR.

/S/ W. WILLIAM LEAPHART

/S/ KARLA M. GRAY